OPINION[2]
SMITH, Circuit Judge.
Although the jurors in Audrey McDan-iels’ case initially miscommunicated to the trial judge that they were unable to return a verdict on the charge of third degree murder, they subsequently confirmed in open court that in fact they had unanimously found McDaniels not guilty of that charge. The trial court then recorded a not guilty verdict. The Commonwealth of Pennsylvania successfully appealed the trial court’s refusal to set aside the not guilty verdict. Thereafter, the Commonwealth tried McDaniels a second time. The second jury found McDaniels guilty of third degree murder, and she received a sentence of 15 to 30 years of imprisonment. Eventually she filed a habeas petition pursuant to 28 U.S.C. § 2254. The District Court concluded that the retrial violated McDaniels’ rights under the Double Jeopardy Clause of our Constitution and granted relief. The Commonwealth appealed.[3] For the reasons set forth below, we will affirm the judgment of the District Court.
I.
Brahim Dukes, an 18 year old with significant physical disabilities, died of starvation and dehydration in December of 2001. At the time of his death, Brahim was in the custody of McDaniels, who was his stepmother. This horrific crime resulted in the Commonwealth charging McDaniels with, inter alia, third degree murder and involuntary manslaughter. The matter proceeded to trial, and on the first day of deliberations the jury advised the court that it was deadlocked on the charges. Court adjourned for the day and the jury went home.
The following morning, the jury resumed its deliberations. Later that afternoon, they again advised the court by a note that they were deadlocked. The jury returned to the courtroom, and once they were seated in the jury box, the following exchange occurred:
Court: For the record, the jury sent exhibit number four. “Your Honor, we *121 are hopelessly deadlocked at this time and unable to reach a verdict.”
Now, there were two separate charges in this case.
Who is the foreman or forelady?
Foreman, stand up please.
(Juror complies).
Court: Was there an agreement on any of the two charges?
Foreman: Yes, Your Honor.
Court: There was?
Foreman: Yes.
Court: What was the agreement?
Foreman: That we had an agreement on involuntary manslaughter—
Juror: No.
Foreman: I mean third degree, I am sorry.
Court: You agreed on third degree?
Juror: No.
Foreman: No, we did not agree, I am sorry.
Court: You did not agree. And you did not agree on involuntary?
Foreman: We had—some did agree on involuntary.
Court: All right. The point is, is there any possibility of a verdict in this case?
Foreman: At this point, Your Honor, I don’t think so.
Court: Okay. Well, I asked you before, and I will ask you again, if any further deliberations will prove fruitful I will send you back. But if you don’t think so then we’ll just end it right here. Does anybody on the jury think that further deliberations will be worthwhile?
No response.
Court Crier: For the record, there is nothing on the verdict sheet.
Court: All right. Okay. This case will have to be retried before another jury. That’s the problem.
As the foreman, you are telling me there is no hope for a decision in this case.
Foreman: No sir.
A98-99.
Despite the red flags raised by the foreman’s initial indication that there was an agreement and the immediate contradictions from another juror, the trial judge failed to step back and take the time necessary to “scrupulous[ly]” consider whether “manifest necessity” required the declaration of a mistrial. United States v. Jorn, 400 U.S. 470, 485, 91 S.Ct. 547, 27 L.Ed.2d 548 (1971) (plurality opinion). Instead of carefully examining the foreman and jury to “assure himself that the situation warranted] action on his part foreclosing [McDaniels] from a potentially favorable judgment,” id. at 486, 91 S.Ct. 547, the trial judge simply declared a hung jury and discharged them. He and counsel then proceeded to the jury room.
Upon entering the deliberation room, the trial jufige was confronted with something remarkable: “On the blackboard each juror had voted, not guilty, right on down the line,” on the third degree murder charge. A107. According to the judge, after the jurors returned to the deliberation room they discussed the court’s questions concerning their ability to reach a verdict. When the judge entered that room, the jury explained that it “did not fully understand what [he] was asking. And that in fact, they all had agreed that it was not guilty as to third degree murder. The only thing they could not agree on [was] whether or not it was involuntary manslaughter.” A101. McDaniels’ counsel then asked that the “jury be re-established into the jury box” and the court granted that request. A101.
Having returned to the courtroom, the trial judge placed on the record what took *122 place when he and counsel entered the jury room. He then “ask[ed] the foreman to rise and announce to the Court what was the decision of the jury on third degree murder.” A101. The foreman replied: “Not guilty.” Id. The court inquired: “Did everybody agree to that [verdict]?” A102. “Everybody ... said yes.” Id. The court posed a different question to the jurors in an effort to determine if any juror disagreed. When there was no response indicating disagreement, the court declared that the “jury has unanimously said that it was not guilty as to third degree murder.” Id. The judge then asked: “And as to involuntaryt,] could you agree?” Id. The foreman advised that “we had some that agreed” to the involuntary manslaughter charge and “[s]ome did not.” Id. The trial judge noted that the deadlock was on the involuntary manslaughter charge, and he then permitted the jurors to fill out the verdict- slip. McDaniels’ counsel requested that the judge “record that verdict officially as not guilty as to third degree.” Id. The trial judge agreed and announced the verdict of “[n]ot guilty of third and hopelessly deadlocked on involuntary.” Id.
Thereafter, the Commonwealth filed a motion to set aside the' hot guilty verdict. At a hearing on the motion, the trial judge stated that when he and counsel walked into the jury room, he saw “on the board there was a list of all the jurors and how they voted on third degree murder. And each one of them voted[ ] not guilty.” A107. The judge denied the Commonwealth’s motion, stating that “once a person has been found not guilty by a jury, that person is not entitled to be retried a second time.” A110. In a subsequent written opinion, he explained that he acted to “prevent [McDaniels] from being tried a second time for a charge for which the jury intended her to be acquitted. Changing the jury’s verdict was necessary to prevent defendant from being placed in double jeopardy as prohibited by the federal constitution.” A436. The judge further noted in his written opinion that he “did not attempt to influence the jurors in any way when he addressed them after the verdict was recorded, and was indeed surprised to see the marker-board that contained the jury’s unanimous votes for acquittal on the third-degree murder charge.” A437-38.
The Commonwealth appealed. McDan-iels’ brief in opposition did not explicitly invoke the Double Jeopardy Clause. Nonetheless, after a thorough factual recitation, counsel asserted that the “Commonwealth is seeking to overturn the verdict of not guilty on murder of the third degree.” A505 (emphasis added). Counsel argued that it would be a tragedy if McDaniels were to “be retried on third degree murder.” A513.
The Pennsylvania Superior Court began its analysis of the appeal by stating: “At first glance, it appears that the Commonwealth is appealing a verdict of acquittal, which is clearly impermissible.” Commonwealth v. McDaniels, 886 A.2d 682, 686 (Pa. Super. Ct. 2005). The Superior Court, however, focused on the unusual procedural history of the case and declared that the trial “court had no authority to dismiss the deadlocked verdict on third degree murder once it was recorded and the jury dismissed.” Id. It determined that the not guilty verdict on third degree murder was “a legal nullity.” Id.
On remand, a second trial followed in May of 2007. That jury convicted McDan-iels of third degree murder and acquitted her on the involuntary manslaughter charge. The trial court sentenced McDan-iels to 15 to 30 years of imprisonment.[4] *123 McDaniels’ subsequent direct appeal and her petition for post-conviction relief were unsuccessful. This § 2254 petition followed, which asserts that the retrial following the not guilty verdict in the first trial violated the Double Jeopardy Clause. In a comprehensive opinion, District Judge Cynthia M. Rufe agreed and granted relief under § 2254. The Commonwealth filed this timely appeal.
II.
The Commonwealth contends that McDaniels’ double jeopardy claim is procedurally defaulted and that we cannot reach its merits. Our review of whether a habeas petitioner has fairly presented and exhausted a constitutional claim is plenary. Greene v. Palakovich, 606 F.3d 85, 93 n.3 (3d Cir. 2010).
In determining whether McDaniels exhausted her double jeopardy claim, we start by recognizing that “the most fundamental rule in the history of double jeopardy jurisprudence has been that ‘[a] verdict of acquittal ... could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution.’ ” United States v. Martin Linen Supply Co., 430 U.S. 564, 571, 97 S.Ct. 1349, 51 L.Ed.2d 642 (1977) (quoting Ball v. United States, 163 U.S. 662, 671, 16 S.Ct. 1192, 41 L.Ed. 300 (1896)). “The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense....” Green v. United States, 355 U.S. 184, 187, 78 S.Ct. 221, 2 L.Ed.2d 199 (1957). The Court in Green declared that it “is one of the elemental principles of our criminal law that the Government cannot secure a new trial by means of an appeal even though an acquittal may appear to be erroneous.” Id. at 188, 78 S.Ct. 221 (citing Ball, 163 U.S. at 671, 16 S.Ct. 1192). In Benton v. Maryland, the Supreme Court “f[ou]nd that the double jeopardy prohibition of the Fifth Amendment represents a fundamental ideal in our constitutional heritage,” and it held that the prohibition applies “to the States through the Fourteenth Amendment.” 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).
Whether McDaniels exhausted her double jeopardy claim requires consideration of whether Pennsylvania’s state courts were given “an initial opportunity to pass upon and correct” the alleged violation of this fundamental right against double jeopardy. Picard v. Connor, 404 U.S. 270, 275, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971) (internal quotation marks and citation omitted); see also O’Sullivan v. Boerckel, 526 U.S. 838, 844, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999) (reiterating that state courts must be given “a fair opportunity to act” on a state prisoner’s claims (emphasis omitted)). The doctrine of exhaustion “prevent[s] ‘unnecessary conflict between courts equally bound to guard and protect rights secured by the Constitution.’” Picard, 404 U.S. at 275, 92 S.Ct. 509 (quoting Ex Parte Royall, 117 U.S. 241, 251, 6 S.Ct. 734, 29 L.Ed. 868 (1886)). Thus, the habeas petitioner must “present the state courts with the same claim he urges upon the federal court.” Id. at 276, 92 S.Ct. 509. While the claim must be “brought to the *124 attention of the state courts,” a state petitioner is not required to “cit[e] ‘book and verse on the federal constitution’ ” to satisfy the exhaustion requirement. Id. at 278, 92 S.Ct. 509 (omitting citation). Rather, Picard “simply h[e]ld that the substance of the federal habeas corpus claim must first be presented” to the state courts. Id. (emphasis- added); see also Baldwin v. Reese, 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004) (concluding a state prisoner must “alert” the state court to the claim in her petition or brief and cannot rely on reference to the claim in a lower court opinion).
The record before us confirms that the issue of whether McDaniels could be retried in light of the not guilty verdict was entertained by the trial court when it considered the Commonwealth’s motion. The trial court recognized the double jeopardy issue and denied the Commonwealth’s, motion to set aside the not guilty verdict on the basis that “once a person has been found not guilty by a jury, that person is not entitled to be retried the second time.” A110. In its opinion denying the motion, the trial court explained that McDaniels could not be retried again or she would be “placed in double jeopardy, as prohibited by the federal constitution.” A436.
McDaniels’ appellate brief, opposing the Commonwealth’s appeal to Superior Court, asserted that the trial court’s order should be affirmed because the “Commonwealth is seeking to overturn the verdict of not guilty on murder of the third degree and has asked this Honorable Court to review the same.” A505 (emphasis added). As we explained above, when an appellant alleges the State is seeking to overturn a not guilty verdict, an appellant has explicated the sine qua non of a double jeopardy claim. See Martin Linen Supply, 430 U.S. at 571, 97 S.Ct. 1349 (“Perhaps the most fundamental rule in the history of double jeopardy jurisprudence has been that ‘[a] verdict of acquittal ... could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution.’ ” (quoting Ball, 163 U.S. at 671, 16 S.Ct. 1192)); see also Gregg v. Georgia, 428 U.S. 153, 199 n.50, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976) (plurality opinion) (“The suggestion that a jury’s verdict of acquittal could be overturned and a defendant retried would run afoul of the Sixth Amendment jury-trial guarantee and the Double Jeopardy Clause of the Fifth Amendment.”). Thus, even though McDaniels’ brief failed to cite chapter and verse of the Constitution or even to invoke the term “double jeopardy,”[5] her statement that the State sought to overturn her not guilty verdict “brought [her double jeopardy claim] to the attention” of the Superior Court. Picard, 404 U.S. at 277, 92 S.Ct. 509. In short, there was no need for the Superior Court to read beyond McDaniels’ brief to glean her claim. Her brief, which also contained a detailed factual description, “alert[ed]” the Superior Court to her double jeopardy claim, which challenged the Commonwealth’s attempt to overturn the not guilty verdict. Baldwin, 541 U.S. at 32, 124 S.Ct. 1347.
The Superior Court understood the basis of McDaniels’ opposition to the Commonwealth’s appeal. Indeed, as noted above, that court began its analysis by stating: “At first glance, it appears that the Commonwealth is appealing a verdict of acquittal, which is clearly impermissible.” McDaniels, 886 A.2d at 686. That, *125 quite simply, is the stuff of which double jeopardy is made.
We conclude that McDaniels’ argument in her brief opposing the Commonwealth’s motion presented the Superior Court with the “substance of [her] federal habeas corpus claim.” Picard, 404 U.S. at 278, 92 S.Ct. 509. We also conclude that, inarticulately as it may have been framed, the claim McDaniels advanced was a claim of double jeopardy, and it has been exhausted.[6]
Because the Superior Court acknowledged that the foundation of McDaniels’ opposition to the Commonwealth appeal was the constitutional guarantee against double jeopardy, and because the Superior Court denied McDaniels the relief she was seeking, we may “presume[ ] that the state court adjudicated the claim on the merits.” Harrington v. Richter, 562 U.S. 86, 99, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011); see also Johnson v. Williams, 568 U.S. 289, 133 S.Ct. 1088, 1091, 185 L.Ed.2d 105 (2013) (concluding that the Richter presumption also applies when a state court decision addresses some issues, but does not expressly address the federal claim). Accordingly, our review is governed by 28 U.S.C. § 2254(d)(1).
III.
In United States v. Jorn, the Supreme Court declared that “a defendant is placed in jeopardy in a criminal proceeding once the defendant is put to trial before the trier of the facts, whether the trier be a jury or a judge.” 400 U.S. at 479, 91 S.Ct. 547 (citing Green, 355 U.S. at 188, 78 S.Ct. 221). “Acquittals, unlike convictions, terminate the initial jeopardy.” Justices of Bos. Mun. Ct. v. Lydon, 466 U.S. 294, 308, 104 S.Ct. 1805, 80 L.Ed.2d 311 (1984). In determining what constitutes an acquittal, the Court in Martin Linen instructed that the focus of the inquiry is whether there has been a “resolution, correct or not, of some or all of the factual elements of the offense charged.” 430 U.S. at 571, 97 S.Ct. 1349. That is, did the government prove its ease beyond a reasonable doubt? See id. at 572, 97 S.Ct. 1349. Was there a determination that the evidence was “legally insufficient to sustain a conviction”? Id. It is a question of whether, once jeopardy has attached, there has been a determination regarding the defendant’s guilt or innocence. United States v. Scott, 437 U.S. 82, 98 & n.11, 99-100, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978).
Here, there can be no dispute. Jeopardy attached once the jury was empaneled. Because the jury confirmed in court that it unanimously had determined McDaniels was not guilty of third degree murder, there was a substantive determination that the Commonwealth failed to prove its case. Indeed, at oral argument before us, the Commonwealth acknowledged that it did “not dispute that [what occurred] meets the very broad and easily met definition of acquittal.” See Oral Argu- *126 raent at 12:04 -12:13, McDaniels v. Warden Cambridge Springs SCI, No. 14-3485 (April 13, 2016).
The unconstitutionality of reviewing a verdict of acquittal had its genesis in Ball v. United States, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896). There, three defendants were tried for murder. 163 U.S. at 663, 16 S.Ct. 1192. Millard Ball was acquitted by a jury. Id. at 664, 16 S.Ct. 1192. Millard Ball’s brother, John Ball, and Robert Boutwell were found guilty. John Ball and Boutwell successfully appealed, obtaining a reversal of their convictions on the basis that the indictment was fatally defective. A new indictment was returned against all three defendants and they objected to their retrial on double jeopardy grounds. Despite their objections, the second trial was held and the three men were convicted of murder. They appealed.
Addressing Millard Ball’s appeal, the Supreme Court pointed out that he had been acquitted by the jury and that the insufficiency of the indictment did not factor into his freedom. Id. at 670, 16 S.Ct. 1192. The Court declared that Millard Ball’s “acquittal by verdict of the jury could not be deprived of its legitimate effect.” Id. It then articulated the bedrock principle of double jeopardy jurisprudence, stating:
As to the defendant who had been acquitted by the verdict duly returned and received, the court could take no other action than to order his discharge. The verdict of acquittal was final, and could not be reviewed, on error or otherwise, without putting him twice in jeopardy, and thereby violating the constitution.
Id. at 671 (emphasis added).
The Supreme Court has steadfastly applied this rule from Ball, even where the acquittal was clearly erroneous. For example, in Fong Foo v. United States, during the testimony of the government’s fourth witness, the trial court directed the jury to return verdicts of acquittal as to all defendants. 369 U.S. 141, 142, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962) (per curiam). The United States filed a petition for a writ of mandamus seeking vacatur of the judgments of acquittal, which the First Circuit granted. The Supreme Court granted cer-tiorari. Although Justice Clark dissented on the basis that the trial court lacked the “power” to direct the verdicts of acquittal in the midst of the government’s case in chief and that the judgments were a “nullity,” id. at 144, 82 S.Ct. 671 (Clark, J„ dissenting), the majority was not persuaded. It followed Ball and determined that, even though the acquittals by the jury were based on an “egregiously erroneous foundation,” retrial was barred under the Double Jeopardy Clause. Id. at 143, 82 S.Ct. 671.
In Smith v. Massachusetts, the Supreme Court concluded that a midtrial Rule 29 acquittal was a “substantive determination that the prosecution ha[d] failed to carry its burden” on one of the crimes charged. 543 U.S. 462, 468, 125 S.Ct. 1129, 160 L.Ed.2d 914 (2005). That ruling, though based on the court’s misapprehension of the government’s evidence in chief, bai’red retrial because it is “well-established ,.. that the bar [to retrial] will attach to a preverdict acquittal that is patently wrong in law.” Id. at 473, 125 S.Ct. 1129. As support for this declaration, the Supreme Court cited Martin Linen and Fong Foo, as well as other cases in which there was an erroneous acquittal that nonetheless served as a double jeopardy bar to future prosecution. Id.; see also Smalis v. Pennsylvania, 476 U.S. 140, 144 n.7, 106 S.Ct. 1745, 90 L.Ed.2d 116 (1986) (instructing that even if trial court’s dismissal of certain charges after the prosecution had rested its case was wrong, it would not alter the essential character of the ruling, *127 which was that the evidence was insufficient to establish the defendants’ guilt and constituted an acquittal); Sanabria v. United States, 437 U.S. 54, 68-69, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978) (concluding that acquittal based on “erroneous evidentiary ruling, which led to an acquittal for insufficient evidence,” barred further prosecution); Arizona v. Rumsey, 467 U.S. 203, 211, 104 S.Ct. 2305, 81 L.Ed.2d 164 (1984) (concluding that sentencing court’s entry of judgment in favor of the defendant on the issue of life, even though it was based on a misconstruction of the statute, amounted to an acquittal on the death penalty, which barred resentencing to death after the initial sentence of life was set aside). In fact, the Supreme Court noted in Evans v. Michigan that its “cases have applied Fong Foo’s principle broadly.” 568 U.S. 313, 133 S.Ct. 1069, 1074, 185 L.Ed.2d 124 (2013).
In McDaniels, the Superior Court declared that Pennsylvania law does not allow a trial court to re-empanel a criminal jury that has been discharged. 886 A.2d at 688. Nevertheless, we conclude that the trial court’s erroneous re-empanelment and the subsequent entry on the record of the not guilty verdict on the third degree murder charge constituted an acquittal that should have barred retrial. Ball, 163 U.S. at 671, 16 S.Ct. 1192; Fong Foo, 369 U.S. at 143, 82 S.Ct. 671. Thus, the Superi- or Court’s decision, which allowed McDan-iels to be tried a second time on the third degree murder charge, resulted in a violation of McDaniels’ rights under the Double Jeopardy Clause.
That conclusion does not end our inquiry, however. We must also determine whether the Superior Court’s adjudication was “an unreasonable application of ... clearly established Federal law ... as determined by the Supreme Court of the United States.” 28 U.S.C. § 2254(d)(1).
Our review of the Supreme Court’s double jeopardy jurisprudence convinces us that, when the Pennsylvania Superior Court rendered its decision in 2005, it was well settled that even an erroneous acquittal will bar the government from retrying a defendant. Ball, 163 U.S. at 671, 16 S.Ct. 1192; see also Martin Linen, 430 U.S. at 571, 97 S.Ct. 1349; Fong Foo, 369 U.S. at 143, 82 S.Ct. 671. Yet the Superior. Court in this case focused solely on the procedural impropriety of re-empaneling the jury. It did not mention Ball, In other words, the Superior Court failed to apply Ball’s “most fundamental rule” regarding the acquittal by the re-empaneled jury. Given the bedrock nature of the Double Jeopardy Clause and the Supreme Court’s steadfast adherence to the principle enunciated long ago in Ball, we conclude that the Superior Court’s analysis was an unreasonable application of clearly established federal law as determined by the Supreme Court in Ball, Fong Foo, Martin Linen, and their progeny. Ball held that an acquittal “could not be reviewed, on error or otherwise, without putting him twice in jeopardy, and thereby violating the constitution.” 163 U.S. at 671, 16 S.Ct. 1192. Although the Superior Court recognized the error at play, it did not apply the well-established rule set out in Ball to the erroneous acquittal by the jury.
In an attempt to avoid the principle that an acquittal need not be error free, the Commonwealth argues that the trial court lacked jurisdiction to re-empanel the jury and enter a judgment of acquittal. It relies on the Supreme Court’s observation in Ball that “[a]n • acquittal before a court having no jurisdiction is, of course, like all the proceedings in the case, absolutely void, and therefore no bar to subsequent ... trial in a court which has jurisdiction of the offense.” 163 U.S. at 669, 16 S.Ct. 1192. This exception to the Ball rule does *128 not apply here. That exception is generally applicable where the trial court lacked jurisdiction at the inception of the case, such as where a prosecution is brought in' the wrong county. See, e.g., Daniel v. Warden, State Corr. Inst. at Huntingdon, 794 F.2d 880, 883-84 (3d Cir. 1986). But here there is no dispute that jurisdiction was proper at the case’s inception. Nor is there any question that the trial court retained jurisdiction over the case for post-trial proceedings. Because a mistrial had been declared, the case was far from over. McDaniels remained in jeopardy. Indeed, the Commonwealth implicitly recognized that the trial court still had jurisdiction over McDaniels’ case when it submitted the motion to set aside the not guilty verdict. Thus, the state trial court retained jurisdiction. Even though it may have been procedurally erroneous as a matter of state law to reassemble the jury and réc-ord the not guilty verdict, under Ball and its progeny that verdict should have barred further prosecution on the third degree murder charge.[7]
Nor do the Supreme Court’s decisions in Serfass v. United States, 420 U.S. 377, 95 S.Ct. 1055, 43 L.Ed.2d 265 (1975), and United States v. Sanford, 429 U.S. 14, 97 S.Ct. 20, 50 L.Ed.2d 17 (1976) (per cu-riam), aid the prosecution. The Commonwealth asserts that these cases demonstrate that a court may preside over a criminal action and enter a dismissal of the charges without acquitting the defendant for purposes of the Double Jeopardy Clause. This argument ignores that the district court in each of those cases dismissed the indictments before trial even commenced—trials the government had every right to prosecute. In Serfass, the Supreme Court pointed out that the dismissal occurred before jeopardy had attached. 420 U.S. at 389, 95 S.Ct. 1055. Thus in Seifass, the district court had no “power to make any determination regarding the petitioner’s guilt or innocence” and *129 the dismissal did not constitute an acquittal for double jeopardy purposes,[8] Id.
Likewise in Sanford, the jury was deadlocked and the district court declared a mistrial. Prior to retrial, the district court dismissed the indictment. The Supreme Court concluded that Serfass was controlling- and that the order granting dismissal of Sanford’s indictment before the com-meneement of the retrial did not implicate the Double Jeopardy Clause because no factual determination had been made of the defendant’s guilt. 429 U.S. at 16, 97 S.Ct. 20. The circumstances here are a far cry from an order dismissing an indictment without any resolution by a factfin-der of the defendant’s guilt or innocence, see Scott, 437 U.S. at 98-100, 98 S.Ct. *130 2187,[9] and therefore neither Serf ass nor Sanford support the Commonwealth’s position.
In sum, we conclude that this case is governed by Ball and Fong Foo. Although the re-empanelment of the jury and the entry on the docket of the not guilty verdict may have been error according to the Pennsylvania Superior Court, it remains that the re-empaneled jury' announced a unanimous verdict of acquittal of the third degree murder charge—the same verdict it had agreed upon in the sanctity of the jury room. Under clearly established Supreme Court law, the government may not subject an accused to retrial after a “verdict of acquittal ... on error or otherwise.” Ball, 163 U.S. at 671, 16 S.Ct. 1192; see also Fong Foo, 369 U.S. at 143, 82 S.Ct. 671; Martin Linen, 430 U.S. at 570-71, 97 S.Ct. 1349. The Superior Court did not take into account this fundamental rule.[10] Given the bedrock principle articulated in Ball, it was objectively unreasonable not to apply this precedent and its progeny.[11]
*131 We will affirm the judgment of the District Court.

. This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

.The District Court exercised jurisdiction un- • der 28 U.S.C. § 2254. We have appellate jurisdiction under 28 U.S.C. §§ 2253(a) and 1291.

. McDaniels served one year and eight months by the time the trial court denied the *123 Commonwealth’s motion to set aside the not guilty verdict in the first trial. Together with the years of imprisonment served since her May 2007 conviction, she has already served more than eleven years of her sentence. It is worth noting that a conviction for involuntary manslaughter is a misdemeanor of the first degree subject to. only a five year term of imprisonment. See 18 Pa. Con. Stat. §§ 1104,-2504.

. Not even the Fifth Amendment contains the phrase "double jeopardy.” See U.S. Const. amend. V ("[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb.”).

. The Commonwealth (and the dissent) contend that a state court's sua sponte consideration of a federal claim cannot satisfy the exhaustion requirement. Because we have concluded that McDaniels presented the substance of her claim to the state court, we need not resolve this issue. Nonetheless, as we previously noted, the Supreme Court has "recognized exceptions to th[e] general rule” of exhaustion " ‘where the State has actually passed upon the claim...” Sharrieff v. Cathel, 574 F.3d 225, 228 n.4 (3d Cir. 2009) (quoting Castille v. Peoples, 489 U.S. 346, 351, 109 S.Ct. 1056, 103 L.Ed.2d 380 (1989)); see also Jones v. Dretke, 375 F.3d 352, 354-55 (5th Cir. 2004). In such a situation, the state court has already had an opportunity to avoid any constitutional violation, and requiring representation of a claim will not avoid "friction between the state and federal court systems.” O'Sullivan, 526 U.S. at 845, 119 S.Ct. 1728.

. We are well aware of the Supreme Court’s decision in Dietz v. Bouldin, — U.S. —, 136 S.Ct. 1885, 1895, 195 L.Ed.2d 161 (2016), and its observation that under certain circumstances, a district court may exercise its “inherent power to recall a jury” and that this power might be “limited to civil cases only.” The Court further noted that "[g]iven additional concerns in criminal cases, such as attachment of the double jeopardy bar, we do not address here whether it would be appro- ' priate to recall a jury after discharge in a criminal case.” Id. Dietz is not controlling. We are not addressing whether the state court erred in concluding that the jury could not be recalled after it was discharged. Rather, given the impropriety under state law of entering the jury's not guilty verdict on the record, we are determining whether that erroneous acquittal barred retrial under the Double Jeopardy Clause.
The dissent makes much of the type of error at issue in this case, positing that the trial court acted “ultra vires of state law.” We need not resolve the issue, but nonetheless express skepticism about this conclusion. We acknowledge that Commonwealth v. Johnson, 359 Pa. 287, 59 A.2d 128, 129 (1948), declared, in a case in which the initial verdict of not guilty on first degree murder and voluntary manslaughter was then altered to guilty on the manslaughter charge, that “[t]he established rule is that the verdict as recorded is the verdict of the jury and the latter shall not be permitted to impeach or to alter or amend it after their separation or discharge.” But the Pennsylvania Supreme Court subsequently •noted that the verdict might be altered “in ‘extremely exceptional cases' ... and even then ‘only unless to make the corrected verdict conform to the obvious intention of the jury[.]' ” Commonwealth. v. Dzvonick, 450 Pa. 98, 297 A.2d 912, 914 n.4 (1972). That would appear to support the trial court’s action here, even if—as the Pennsylvania Superior Court concluded—it was wrong. Moreover, we are mindful of the Supreme Court's observation that “a jurisdictionally proper but substantively incorrect judicial decision is not ultra vires.” City of Arlington, Tx. v. FCC, 569 U.S. 290, 133 S.Ct. 1863, 1869, 185 L.Ed.2d 941 (2013).

, The dissent relies upon Fong Foo, Martin Linen, Smith and Evans for the principle that there is “constitutional significance to whether the trial court was authorized under state law to enter the acquittal at the point it did.” In the dissent's view, it is only when the trial court has the power or the authority to enter a verdict that there can be a valid acquittal barring retrial under the Double Jeopardy Clause. We are not persuaded.
We agree with the dissent that we must first ask whether there "was, in fact, a judgment of acquittal.” And we acknowledge that the procedural context and the authority of the trial court—or, as the dissent contends, the "power” of the court to act—informs the determination of whether there was an acquittal barring reprosecution. Both of these considerations inform whether jeopardy actually attached and the factfinder made a determination as to the defendant’s factual guilt or innocence. See Scott, 437 U.S. at 98-100, 98 S.Ct. 2187. But there is no question in this case that jeopardy attached, or that jurisdiction was proper, or that jeopardy terminated in a unanimous jury verdict of not guilty. That resolution falls squarely within the definition of acquittal for purposes of double-jeopardy jurisprudence, notwithstanding the procedural errors that led to the acquittal. See Martin Linen, 430 U.S. at 571, 97 S.Ct. 1349. The dissent has not identified a single case that has rejected a double-jeopardy claim under such circumstances.
Aside from cases where the trial court lacked jurisdiction, or cases where jeopardy never attached, the dissent's distinction between "evidentiary” defects and defects in "power” proves to be illusory. For example, the dissent reads Fong Foo as "expressly” rejecting the argument that the district court “was without power to direct acquittals." Dissent at 12. But nowhere did the Supreme Court hold, "expressly” or otherwise, that the district court in fact had the power to direct an acquittal before the government concluded its case-in-chief, based on, inter alia, a perception of prosecutorial misconduct. Rather, any' lack of "power” under the applicable procedural rules was irrelevant to the Court’s analysis. It was enough in Fong Foo that the petitioners were "tried under a valid indictment,” the trial court "had jurisdiction over them and over the subject matter,” the trial judge directed a return of the verdicts of acquittal and jeopardy was “terminated with the entry of a final judgment of acquittal as to each petitioner.” Fong Foo, 369 U.S. at 143, 82 S.Ct. 671. Thus, the critical point in Ball, Fong F oo, and others is that the proceedings resolved in flawed judgments of acquittal, but judgments of acquittal all the same. That is the case here.
Smith further illustrates this point. There the Supreme Court looked to the Massachusetts Rules of Criminal Procedure not to determine the trial judge’s "power” to take the action it did—but rather to confirm that the trial judge’s grant of a “motion for a required finding of not guilty” after the prosecution rested its case in chief was in fact an acquittal—i.e., an evaluation of the evidence and its sufficiency. 543 U.S. at 468-69, 125 S.Ct. 1129. Because the trial court had concluded the prosecution failed to introduce "a scintilla of evidence” on an element of the offense, id. at 465, 125 S.Ct. 1129, the Supreme Court determined there was an acquittal that barred further factfinding of the defendant’s guilt on that particular offense. See also United States v. Sisson, 399 U.S. 267, 288-90, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970) (analyzing District Court’s action in granting the Rule 34 motion for arrest of judgment, focusing on District Court's reliance upon the "evidence adduced at the trial,” and concluding that the arrest of judgment "was in fact an acquittal rendered by the District Court after the jury’s verdict of guilty” that -could not be appealed by the government).

. In our view, it is also settled that an acquittal requires a factual determination of the defendant's guilt or innocence by judge or jury. Martin Linen acknowledged that it is not the label that is determinative of whether there is an acquittal, but whether what happened “actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.” 430 U.S. at 571, 97 S.Ct. 1349. Scott reinforced this by analyzing whether there had been a determination of the defendant's guilt or innocence. Scott, 437 U.S. at 98, 98 S.Ct. 2187. A few months before the Superior Court ruled on McDaniels’ case, the Supreme Court observed in Smith that the Martin Linen definition focusing on whether there had been a factual resolution had been “consistently used” in double jeopardy cases. 543 U.S. at 468, 125 S.Ct. 1129. Here there is no dispute that there was a factual determination made by the jury. Yet the significance of this not guilty determination was unreasonably disregarded by the Superior Court. Indeed, Evans, though issued after the Superior Court’s decision, confirms that the Supreme Court has been of the view that courts have understood for some time that Scott provided the applicable test. 133 S.Ct. at 1080 ("Scott has stood the test of time and we expect courts will continue to have little 'difficulty in distinguishing between those rulings which relate to the ultimate question of guilt or innocence and those which serve other purposes.’ ” (quoting Scott, 437 U.S. at 98 n.11, 98 S.Ct. 2187)).

. The dissent implies that the state court’s decision was reasonable because two other state courts have held double jeopardy did not bar retrial in similar circumstances. But those state court decisions obviously were not reached in the context of a federal habeas proceeding, and therefore did not address the issue we face today: whether those state court decisions involved an unreasonable application of the Supreme Court’s clearly established double jeopardy jurisprudence. Furthermore, we note that one of those state court decisions was found unreasonable by a federal court and habeas relief was granted. See Davenport v. Richardson, No. 14-1092, 2016 WL 299081 (W.D. La. Jan. 20, 2016), adopting No. 14-cv-1092, 2015 WL 9906262 (W.D. La. Apr. 29, 2015). Notably, Louisiana did not appeal the District Court’s decision.

.Had the trial judge’s initial declaration of mistrial stood, there probably still would have been a solid foundation for challenging McDaniels’ retrial as a violation of the Double Jeopardy Clause. That is because, in addition to preventing retrial following a verdict of acquittal, the Double Jeopardy Clause protects a criminal defendant’s "valued right to have his trial completed by a particular tribunal.” Oregon v. Kennedy, 456 U.S. 667, 671-72, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982) (internal quotation marks and citation omitted). The Supreme Court has held that repros-ecution following a mistrial may violate the defendant’s double jeopardy rights if the prosecution is unable to "shoulder the burden of justifying the mistrial” by showing that there was a “manifest necessity” for it. Arizona v. Washington, 434 U.S. 497, 505, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978); see also id. (describing the prosecution’s burden as "a heavy one”); United States v. Rivera, 384 F.3d 49, 56 (3d Cir. 2004) ("Where a District Court sua sponte declares a mistrial in haste, without carefully considering alternatives available to *131 it, it cannot be said to be acting under a manifest necessity.... Any subsequent re-prosecution under those circumstances is barred by the Double Jeopardy Clause.”). The importance of the trial judge’s role in ensuring that “manifest necessity” compels a mistrial cannot be overstated. See Jorn, 400 U.S. at 485-86, 91 S.Ct. 547.
Here, because the trial judge sua sponte declared a mistrial without seeking input from either party, McDaniels had little opportunity to object. Cf. id. at 487, 91 S.Ct. 547 (noting that “the trial judge acted so abruptly in discharging the jury that, had ... the defendant [been disposed] to object to the discharge of the jury, there would have been no opportunity to do so”). In any event, McDan-iels’ double jeopardy claim was not premised on the trial judge’s initial declaration of mistrial.