# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

v

STEVEN ANTHONY FISHER,

        Defendant-Appellee.

UNPUBLISHED
March 22, 2018

No. 336902
Isabella Circuit Court
LC No. 2016-000801-FH

---

Before: SAWYER, P.J., and BORRELLO and SERVITTO, JJ.

PER CURIAM.

The prosecution appeals as of right an order granting defendant's motion to dismiss the charges against him on the basis of an affirmative defense under § 8 of the Michigan Medical Marihuana Act (MMMA), MCL 333.26421 *et seq.* We reverse and remand.

## I. BACKGROUND

In the early months of 2016, police received several anonymous tips that defendant was growing marijuana at his residence and was processing the marijuana into THC[1] wax at his work shop. Police conducted a trash pull at defendant's residence and found suspected marijuana, (later field tested positive) and wax paper containing suspected marijuana/THC wax. A second trash pull at defendant's residence conducted several weeks later produced the same items as well as marijuana seeds. Police obtained a search warrant for defendant's residence and another residential location based on this information and, upon executing the same, found 28 marijuana plants, other plants that had a root structure growing in red Solo cups, "prepackaged marijuana in gallon sized bags" inside a larger trash bag, grow equipment, marijuana drying on racks, and marijuana in Mason jars at defendant's residence. At the second residential location, police found a total of 440 grams of THC wax in the garage on Fourth Street, as well as a bag of marijuana.

The prosecution charged defendant with two counts of possession with intent to deliver between 5 and 45 kilograms of processed marijuana, one count of manufacturing marijuana oil,

---

[1] Tetrahydrocannabinol

one count of possessing a firearm while committing a felony, and two counts of maintaining a drug house. The district court bound defendant over for trial. Among other motions, defendant moved to dismiss the charges based on § 8 of the MMMA. The trial court held a § 8 hearing at which defendant, his wife, and Lieutenant Matthew Rice of the Michigan State Police testified. The trial court concluded that defendant established a § 8 defense and ordered dismissal of the charges against defendant. The prosecution now appeals as of right.

## II. § 8 DEFENSE

The prosecution contends that the trial court improperly found a lack of questions of fact regarding defendant's § 8 defense and a lack of corpus declecti at defendant's § 8 motion. This Court reviews for an abuse of discretion a circuit court's grant of a motion to dismiss. *People v Bylsma*, 493 Mich 17, 26; 825 NW2d 543 (2012) (citation omitted). A circuit court abuses its discretion "when its decision falls outside the range of principled outcomes." *People v Nicholson*, 297 Mich App 191, 196; 822 NW2d 284 (2012) (citation omitted). The Court reviews "the evidence de novo to determine whether the trial court properly granted or denied the defendant's motion to dismiss under § 8." *People v Ted Anderson (On Remand)*, 298 Mich App 10, 16; 825 NW2d 641 (2012).

This Court reviews de novo questions of statutory interpretation. *People v Redden*, 290 Mich App 65, 76; 799 NW2d 184 (2010). Because the MMMA was a voter initiative, this Court interprets the statute accordingly:

> The words of an initiative law are given their ordinary and customary meaning as would have been understood by the voters. We presume that the meaning as plainly expressed in the statute is what was intended. This Court must avoid a construction that would render any part of a statute surplusage or nugatory, and [w]e must consider both the plain meaning of the critical words or phrases as well as their placement and purpose in the statutory scheme. [*Id*. at 76-77 (quotation marks and citations omitted, alteration in original).]

This Court also reviews de novo questions of constitutional law. *People v Bobby Smith*, 478 Mich 292, 298; 733 NW2d 351 (2007).

The MMMA permits a patient or a primary caregiver to assert the medical use of marijuana as an affirmative defense regardless of registration status. *People v Hartwick*, 498 Mich 192, 226; 870 NW2d 37 (2015). The MMMA defines a "primary caregiver" as "a person who is at least 21 years old and who has agreed to assist with a patient's medical use of marihuana," and who has not been convicted of certain crimes. MCL 333.26423(k). A "qualifying patient" or "patient" is "a person who has been diagnosed by a physician as having a debilitating medical condition." MCL 333.26423(*l*).

A defendant seeking to assert a § 8 defense must "present prima facie evidence for each element of § 8(a)," *Hartwick*, 498 Mich at 228, by a preponderance of the evidence, *id*. at 228 n 69. A primary caregiver must establish "the elements of § 8(a)(1) for each patient to whom the primary caregiver is alleged to have unlawfully provided marijuana." *Id*. at 232. The elements of a § 8 defense are as follows:

(1) A physician has stated that, in the physician's professional opinion, after having completed a full assessment of the patient's medical history and current medical condition made in the course of a bona fide physician-patient relationship, the patient is likely to receive therapeutic or palliative benefit from the medical use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition

(2) The patient and the patient's primary caregiver, if any, were collectively in possession of a quantity of marihuana that was not more than was reasonably necessary to ensure the uninterrupted availability of marihuana for the purpose of treating or alleviating the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition; and

(3) The patient and the patient's primary caregiver, if any, were engaged in the acquisition, possession, cultivation, manufacture, use, delivery, transfer, or transportation of marihuana or paraphernalia relating to the use of marihuana to treat or alleviate the patient's serious or debilitating medical condition or symptoms of the patient's serious or debilitating medical condition. [MCL 333.26428(a).]

If a defendant presents facts to support each element of a § 8 defense, but questions of fact exist regarding the elements of the defense, the trial court may not dismiss the charges and must submit the defense to the jury. *Hartwick*, 498 Mich at 227. "The trial court may not weigh the evidence, assess credibility, or resolve factual disputes at the hearing." *Anderson*, 298 Mich App at 16 (citation omitted).

A. § 8(a)(1).

The MMMA defines a bona fide physician-patient relationship as follows:

(a) "Bona fide physician-patient relationship" means a treatment or counseling relationship between a physician and patient in which all of the following are present:

(1) The physician has reviewed the patient's relevant medical records and completed a full assessment of the patient's medical history and current medical condition, including a relevant, in-person, medical evaluation of the patient.

(2) The physician has created and maintained records of the patient's condition in accord with medically accepted standards.

(3) The physician has a reasonable expectation that he or she will provide follow-up care to the patient to monitor the efficacy of the use of medical marihuana as a treatment of the patient's debilitating medical condition.

(4) If the patient has given permission, the physician has notified the patient's primary care physician of the patient's debilitating medical condition

and certification for the medical use of marihuana to treat that condition. [MCL 333.26423(a).]

The Supreme Court has explained that a defendant

> must submit medical records or other evidence . . . to show that the physician actually completed a full assessment of the patient's medical history and current medical condition before concluding that the patient is likely to benefit from the medical use of marijuana and before the patient engages in the medical use of marijuana. [*Hartwick*, 498 Mich at 230-231.]

We agree with defendant that he submitted prima facie evidence to satisfy § 8(a)(1). Defendant testified that he had chronic pain resulting from knee and back injuries, and defendant's wife, Leslie, testified that she had chronic pain resulting from pelvic problems. Both testified that they did not react well to synthetic pain relievers and sought to utilize medical marijuana to treat their conditions. In April 2014, defendant and Leslie saw Dr. Robert Townsend at Denali Healthcare regarding medical marijuana certification.[2] Townsend conducted a full assessment of defendant and Leslie before concluding that each would benefit from the use of marijuana to treat their medical conditions. Townsend reviewed their records, discussed their medical history with them, and examined them. Defendant's visit lasted 30 minutes and Leslie's visit lasted 40 minutes. We disagree with the prosecution that the lengths of these visits were too short or that Townsend should have referred Leslie for further verifying procedures. Leslie's conditions were documented in the medical records she provided to Townsend and to the trial court.

We further reject the prosecution's suggestion that Townsend was required to testify about the Fishers' conditions. The primary caregiver, who is not the same as the doctor, must establish the elements of the defense for each patient. *Hartwick*, 498 Mich at 232, 232 n 78. "A defendant who submits proper evidence would not likely need his or her physician to testify to establish prima facie evidence of any element of § 8(a)." *Id*. at 232 n 77. Thus, Townsend's testimony was not required.

Next, the trial court did not err by ruling that defendant showed that Townsend and Denali Healthcare properly maintained medical records.

"[T]he actual text of the physician's statement submitted as part of the registration process might suffice" to prove "the existence of a bona fide physician-patient relationship[.]" *Hartwick*, 498 Mich at 231 n 77. The certification form may attest to each element of the doctor-patient relationship. *Id*. at 232 n 77.

---

[2] The Fishers each testified that Townsend examined them individually before signing their certification forms, which they sent in. Defendant and Leslie each received a medical marijuana registration card. Defendant began growing his own plants to produce marijuana for his and Leslie's medical needs, and he used the plant material to make THC wax, marijuana oil, and marijuana-infused coconut oil.

In this case, the certification form attested that Denali Healthcare maintained its medical records in accordance with medically accepted standards. While the prosecution asserted that missing surveys from October 2015 constituted a lack of recordkeeping, the prosecutor has not provided any evidence that, if the Fishers did not indicate their conditions had changed, it would be standard medical practice to note that the patients' conditions had not changed in their medical records. Because Denali Healthcare certified that they kept the Fishers' medical records in accordance with medically accepted standards, and the prosecution provided only assertions—but no evidence—to the contrary, there is no question of fact regarding whether defendant showed that Townsend and Denali Healthcare properly maintained medical records.

Third, defendant showed that Townsend had a reasonable expectation of providing defendant and Leslie with follow-up care. A bona fide doctor-patient relationship reflects a patient's intention to seek "good-faith medical treatment" rather than "to obtain marijuana under false pretenses." *Redden*, 290 Mich App at 86.

Defendant and Leslie both testified that Townsend told them to follow up with him about their use of medical marijuana if they had any questions or concerns. Defendant and Leslie both signed a form referring to a follow-up survey about the efficacy of medical marijuana. We disagree with the prosecution that the form directs patients to follow up with their primary care doctors. Rather, the form directs patients to continue to see their primary care doctors for other medical problems while limiting the scope of Townsend's practice to seeing patients about medical marijuana. Moreover, when defendant and Leslie asked about follow-up appointments, the staff advised them to complete an online survey and to make appointments only if they were experiencing difficulty. Thus, defendant showed that Townsend reasonably expected to provide necessary follow-up care.

Fourth, the physician certification form that Townsend signed for defendant and Leslie showed his professional opinion that they would likely benefit from the medical use of marijuana. As previously discussed, the certification form may attest to each element of the doctor-patient relationship. *Hartwick*, 498 Mich at 232 n 77.

Thus, the trial court properly concluded that defendant established each element of a "bona fide physician-patient relationship" and of § 8(a)(1).

B. § 8(a)(2).

Next, the prosecutor argues that defendant had more marijuana than an amount reasonably necessary for his and Leslie's care. We agree with the trial court that defendant showed that he did not possess more marijuana than reasonably necessary to ensure an uninterrupted supply for his and Leslie's medical needs.

§ 8(a)(2) does not specify a volume limitation, and the volume limitation stated in § 4 does not apply to § 8. *Hartwick*, 498 Mich at 234.

A patient seeking to assert a § 8 affirmative defense may have to testify about whether a specific amount of marijuana alleviated the debilitating medical condition and if not, what adjustments were made to the consumption rate and the amount of marijuana consumed to determine an appropriate quantity. Once the

patient establishes the amount of usable marijuana needed to treat the patient's debilitating medical condition, determining whether the patient possessed a quantity of marihuana that was not more than was reasonably necessary to ensure [its] uninterrupted availability also depends on how the patient obtains marijuana and the reliability of this source. This would necessitate some examination of the patient/caregiver relationship.

The same analysis applies to primary caregivers seeking to present a defense under § 8. Primary caregivers must establish the amount of usable marijuana needed to treat their patients' debilitating medical conditions and then how many marijuana plants the primary caregiver needs to grow in order ensure "uninterrupted availability" for the caregiver's patients. This likely would include testimony regarding how much usable marijuana each patient required and how many marijuana plants and how much usable marijuana the primary caregiver needed in order to ensure each patient the "uninterrupted availability" of marijuana. [*Id*. at 234-235 (quotation marks omitted).]

Both defendant and Leslie testified about their marijuana use, and defendant testified about how he produced the ingestible forms of marijuana he and Leslie used, including coconut oil, used topically, the oil he orally ingested, and the wax they vaped to avoid the deleterious effects of smoking. Based on the amount of plant material that defendant testified was necessary to make the oils and the wax, the trial court correctly determined that the amount of marijuana the police found in the raid did not exceed defendant and Leslie's medical needs.

We reject the prosecution's argument that, because defendant and Leslie's marijuana use exceeds Townsend's recommendation of one ounce of medical marijuana weekly, defendant necessarily cannot show that the amount of marijuana he possessed was reasonably necessary. A physician's written certification is not "comparable to a pharmaceutical prescription[.]" *Hartwick*, 498 Mich at 239. Likewise, "the actual function of primary caregivers and patients is not comparable to a medical doctor's treatment of an actual patient. Primary caregivers carry out a statutorily created task that is completely unrelated to how a doctor would treat a patient." *Id*. at 240. Accordingly, the prosecution's reliance on the doctor's recommendation is unavailing. The trial court did not err by basing its decision on the testimony rather than on the physician's written certification, particularly when the Fishers ingested their marijuana in a form other than smoking it.[3]

---

[3] The prosecution also asserts that defendant's that the vape pen he used to vaporize the marijuana wax was broken at the time of the raid undermined his statements that he consumed his marijuana by vaping it. We note that defendant stated that the end of the pen was broken, not the entire pen, and the prosecution did not further question defendant about the functionality of the pen.

## C. § 8(a)(3).

Next, the prosecution argues that there was a question of fact regarding whether defendant possessed the marijuana for medical use only and that the trial court improperly ruled inadmissible certain portions of Rice's testimony. We agree and conclude that, while defendant submitted prima facie evidence that the marijuana was for his and his wife's medical use, the trial court erroneously excluded Rice's testimony under the corpus delicti rule. When Rice's testimony is considered, defendant's and Rice's conflicting testimonies about defendant's intent for the "overage" created a question of fact that should have been submitted to the jury.

"Section 8(a)(3) requires both the patient's and the primary caregiver's use of marijuana be for a medical purpose," regardless of registration status. *Hartwick*, 498 Mich at 237. Thus, a defendant must offer prima facie evidence of his "own use of marijuana for a medical purpose and any patients' use of marijuana for a medical purpose." *Id*. "The corpus delicti rule requires that a preponderance of direct or circumstantial evidence, independent of a defendant's inculpatory statements, establish the occurrence of a specific injury and criminal agency as the source of the injury before such statements may be admitted as evidence." *People v Burns*, 250 Mich App 436, 438; 647 NW2d 515 (2002) (citations omitted).

The trial court invoked the corpus delicti rule to exclude Rice's testimony that defendant told Rice he had attempted in the past to sell excess marijuana to dispensaries. The trial court reasoned that the possession of marijuana alone was not evidence of a crime, so defendant's statement to law enforcement that he tried to sell it was an inadmissible extrajudicial statement. The MMMA did not decriminalize marijuana offenses: instead it only offers immunity and an affirmative defense for otherwise criminal acts. *People v Kolanek*, 491 Mich 382, 394; 817 NW2d 528 (2012). "Possession, manufacture, and delivery of marijuana remain punishable offenses under Michigan law." *Id*. Accordingly, the trial court's reasoning that possession of marijuana alone is not a crime was flawed and the trial court should not have invoked the corpus delicti rule to reject Rice's testimony.

In this case, Rice testified that defendant told him that he tried to sell the "overage" to dispensaries. A past attempt to sell marijuana raises a fact question about defendant's claimed medical use of all of the marijuana in his possession at the time of the raid. Defendant's protestations that he intended to use the marijuana for his and his wife's medical needs or to throw it away constitutes prima facie evidence of medical use, but Rice's conflicting testimony created a question of fact that should be resolved by a jury. Because the trial court may not assess credibility or resolve factual disputes at a § 8 hearing, see *Anderson*, 298 Mich App at 16(citation omitted), reversal is necessary.

## D. DOUBLE JEOPARDY

Defendant argues that the prosecution's appeal is moot because the trial court's decision was akin to a directed verdict barring retrial. We disagree.

Both the United States Constitution and the Michigan Constitution bar retrial of the same offense. US Const, Am V; Const 1963, art 1, § 15. An acquittal or a directed verdict based on the prosecution's insufficient proofs bars retrial, even if it results from an erroneous legal

interpretation. *Evans v Michigan*, 568 US 313, 320; 133 S Ct 1069, 185 L Ed 2d 124 (2013). Procedurally, a directed verdict follows the prosecution's case-in-chief if the evidence does not support a finding of guilty beyond a reasonable doubt. *People v Lemmon*, 456 Mich 625, 633-634; 576 NW2d 129 (1998). By contrast, a defendant bears the burden of proving by a preponderance of the evidence a § 8 affirmative defense under the MMMA, *Hartwick*, 498 Mich at 228 n 69, which asserts a legal justification for the admitted charged act, *Kolanek*, 491 Mich at 398 n 36. Further, a defendant must assert a § 8 defense "in a pretrial motion for an evidentiary hearing." *Id*. at 411. See MCL 333.26428(b). Therefore, a successful § 8 affirmative defense is not the equivalent of a directed verdict and double jeopardy does not bar a trial in this case.

Reversed and remanded. We do not retain jurisdiction.

/s/ David H. Sawyer
/s/ Stephen L. Borrello
/s/ Deborah A. Servitto