Justice Sotomayor
delivered the opinion of the Court.
When the State of Michigan rested its case at petitioner Lamar Evans’ arson trial, the court entered a directed verdict of acquittal, based upon its view that the State had not provided sufficient evidence of a particular element of the offense. It turns out that the unproven “element” was not actually a required element at all. We must decide whether an erroneous acquittal such as this nevertheless constitutes an acquittal for double jeopardy purposes, which would mean that Evans could not be retried. This Court has previously held that a judicial acquittal premised upon a “misconstruction” of a criminal statute is an “acquittal on the merits [that] bars retrial.” Arizona v. Rumsey, 467 U. S. 203, 211 (1984). Seeing no meaningful constitutional distinction between a *316 trial court’s “misconstruction” of a statute and its erroneous addition of a statutory element, we hold that a midtrial acquittal in these circumstances is an acquittal for double jeopardy purposes as well.
I
The State charged Evans with burning “other real property,” a violation of Mich. Comp. Laws § 750.73 (1981). The State’s evidence at trial suggested that Evans had burned down an unoccupied house. At the close of the State’s case, however, Evans moved for a directed verdict of acquittal. He pointed the court to the applicable Michigan Criminal Jury Instructions, which listed as the “Fourth” element of the offense “that the building was not a dwelling house.” 3 Mich. Crim. Jury Instr. §31.3, p. 31-7 (2d ed., Supp. 2006/ 2007). And the commentary to the instructions emphasized, “an essential element is that the structure burned is not a dwelling house.” Id., at 31-8. Evans argued that Mich. Comp. Laws § 750.72 criminalizes common-law arson, which requires that the structure burned be a dwelling, while the provision under which he was charged, §750.73, covers all other real property.[1] Persuaded, the trial court granted the motion. 491 Mich. 1, 8, 810 N. W. 2d 535, 539 (2012). The court explained that the “ ‘testimony [of the homeowner] was this was a dwelling house,’ ” so the nondwelling requirement of § 750.73 was not met. Ibid.
*317 On the State’s appeal, the Michigan Court of Appeals reversed and remanded. 288 Mich. App. 410, 794 N. W. 2d 848 (2010). Evans had conceded, and the court held, that under controlling precedent, burning “other real property” is a lesser included offense under Michigan law, and disproving the greater offense is not required. Id., at 416, 794 N. W. 2d, at 852 (citing People v. Antonelli, 66 Mich. App. 138, 140, 238 N. W. 2d 551, 552 (1975) (on rehearing)).[2] The court thus explained it was “undisputed that the trial court misper-ceived the elements of the offense with which [Evans] was charged and erred by directing a verdict.” 288 Mich. App., at 416, 794 N. W. 2d, at 852. But the court rejected Evans’ argument that the Double Jeopardy Clause barred retrial. Id., at 421-422, 794 N. W. 2d, at 856.
In a divided decision, the Supreme Court of Michigan affirmed. It held that “when a trial court grants a defendant’s motion for a directed verdict on the basis of an error of law that did not resolve any factual element of the charged offense, the trial court’s ruling does not constitute an acquittal for the purposes of double jeopardy and retrial is therefore not barred.” 491 Mich., at 4, 810 N. W. 2d, at 536-537.
We granted certiorari to resolve the disagreement among state and federal courts on the question whether retrial is barred when a trial court grants an acquittal because the prosecution had failed to prove an “element” of the offense that, in actuality, it did not have to prove.[3] 567 U. S. 905 (2012). We now reverse.
*318 H-i 8—f
A
In answering this question, we do not write on a clean slate. Quite the opposite. It has been half a century since we first recognized that the Double Jeopardy Clause bars retrial following a court-decreed acquittal, even if the acquittal is “based upon an egregiously erroneous foundation.” Fong Foo v. United States, 369 U. S. 141, 143 (1962) (per curiam). A mistaken acquittal is an acquittal nonetheless, and we have long held that “[a] verdict of acquittal . . . could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution.” United States v. Ball, 163 U. S. 662, 671 (1896).
Our cases have applied Fong Foo’s principle broadly. An acquittal is unreviewable whether a judge directs a jury to return a verdict of acquittal, e. g., Fong Foo, 369 U. S., at 143, or forgoes that formality by entering a judgment of acquittal herself. See Smith v. Massachusetts, 543 U. S. 462, 467-468 (2005) (collecting cases). And an acquittal precludes retrial even if it is premised upon an erroneous decision to exclude evidence, Sanabria v. United States, 437 U. S. 54, 68-69, 78 (1978); a mistaken understanding of what evidence would suffice to sustain a conviction, Smith, 543 U. S., at 473; or a “misconstruction of the statute” defining the requirements to convict, Rumsey, 467 U. S., at 203, 211; cf. Smalis v. Pennsylvania, 476 U. S. 140, 144-145, n. 7 (1986). In all these circumstances, “the fact that the acquittal may result from erroneous evidentiary rulings or erroneous interpretations of governing legal principles affects the accuracy of that determination, but it does not alter its essential character.” United States v. Scott, 437 U. S. 82, 98 (1978) (internal quotation marks and citation omitted).
Most relevant here, our cases have defined an acquittal to encompass any ruling that the prosecution’s proof is insufficient to establish criminal liability for an offense. See ibid., *319 and n. 11; Burks v. United States, 437 U. S. 1, 10 (1978); United States v. Martin Linen Supply Co., 430 U. S. 564, 571 (1977). Thus an “acquittal” includes “a ruling by the court that the evidence is insufficient to convict,” a “factual finding [that] necessarily establishes] the criminal defendant's lack of criminal culpability,” and any other “rulin[g] which relate[s] to the ultimate question of guilt or innocence.” Scott, 437 U. S., at 91, 98, and n. 11 (internal quotation marks omitted). These sorts of substantive rulings stand apart from procedural rulings that may also terminate a case midtrial, which we generally refer to as dismissals or mistrials. Procedural dismissals include rulings on questions that “are unrelated to factual guilt or innocence,” but “which serve other purposes,” including “a legal judgment that a defendant, although criminally culpable, may not be punished” because of some problem like an error with the indictment. Id., at 98, and n. 11.
Both procedural dismissals and substantive rulings result in an early end to trial, but we explained in Scott that the double jeopardy consequences of each differ. “[T]he law attaches particular significance to an acquittal,” so a merits-related ruling concludes proceedings absolutely. Id., at 91. This is because “[t]o permit a second trial after an acquittal, however mistaken the acquittal may have been, would present an unacceptably high risk that the Government, with its vastly superior resources, might wear down the defendant so that ‘even though innocent he may be found guilty,’ ” ibid. (quoting Green v. United States, 355 U. S. 184, 188 (1957)). And retrial following an acquittal would upset a defendant’s expectation of repose, for it would subject him to additional “embarrassment, expense and ordeal” while “compelling him to live in a continuing state of anxiety and insecurity.” Id., at 187. In contrast, a “termination of the proceedings against [a defendant] on a basis unrelated to factual guilt or innocence of the offense of which he is accused,” 437 U. S., at 98-99, i. e., some procedural ground, does not pose the same *320 concerns, because no expectation of finality attaches to a properly granted mistrial.
Here, “it is plain that the [trial court] . . . evaluated the [State’s] evidence and determined that it was legally insufficient to sustain a conviction.” Martin Linen, 430 U. S., at 572. The trial court granted Evans’ motion under a rule that requires the court to “direct a verdict of acquittal on any charged offense as to which the evidence is insufficient to support conviction.” Mich. Rule Crim. Proc. 6.419(A) (2012). And the court’s oral ruling leaves no doubt that it made its determination on the basis of “ ‘[t]he testimony’ ” that the State had presented. 491 Mich., at 8, 810 N. W. 2d, at 539. This ruling was not a dismissal on a procedural ground “unrelated to factual guilt or innocence,” like the question of “preindictment delay” in Scott, but rather a determination that the State had failed to prove its case. 437 U. S., at 98, 99. Under our precedents, then, Evans was acquitted.
There is no question the trial court’s ruling was wrong; it was predicated upon a clear misunderstanding of what facts the State needed to prove under state law. But that is of no moment. Martin Linen, Sanabria, Rumsey, Smalis, and Smith all instruct that an acquittal due to insufficient evidence precludes retrial, whether the court’s evaluation of the evidence was “correct or not,” Martin Linen, 430 U. S., at 571, and regardless of whether the court’s decision flowed from an incorrect antecedent ruling of law. Here Evans’ acquittal was the product of an “erroneous interpretation of governing legal principles,” but as in our other cases, that error affects only “the accuracy of [the] determination” to acquit, not “its essential character.” Scott, 437 U. S., at 98 (internal quotation marks omitted).
B
The court below saw things differently. It identified a “constitutionally meaningful difference” between this case *321 and our previous decisions. Those cases, the court found, “involve[d] evidentiary errors regarding the proof needed to establish a factual element of the . . . crimes at issue,” but still ultimately involved “a resolution regarding the sufficiency of the factual elements of the charged offense.” 491 Mich., at 14-15, 810 N. W. 2d, at 542-543. When a court mistakenly “identified] an extraneous element and dismissed] the case solely on that basis,” however, it has “not resolve[d] or even address[ed] any factual element necessary to establish” the offense. Id., at 15, 20, 810 N. W. 2d, at 543, 546. As a result, the court below reasoned, the case terminates “based on an error of law unrelated to [the] defendant’s guilt or innocence on the elements of the charged offense,” and thus falls outside the definition of an acquittal. Id., at 21, 810 N. W. 2d, at 546.
We fail to perceive the difference. This case, like our previous ones, involves an antecedent legal error that led to an acquittal because the State failed to prove some fact it was not actually required to prove. Consider Rumsey. There the trial court, sitting as sentencer in a capital case involving a murder committed during a robbery, mistakenly held that Arizona’s statutory aggravating factor describing killings for pecuniary gain was limited to murders for hire. Accordingly, it found the State had failed to prove the killing was for pecuniary gain and sentenced the defendant to life imprisonment. After the State successfully appealed and obtained a death sentence on remand, we held that retrial on the penalty phase question was a double jeopardy violation.[4]
*322 The only relevant difference between that situation and this one is that in Rumsey the trial court’s error was called a “misinterpretation” and a “misconstruction of the statute,” 467 U. S., at 207, 211, whereas here the error has been designated the “erroneous addition of [an] extraneous element to the charged offense,” 491 Mich., at 3-4, 810 N. W. 2d, at 536. But we have emphasized that labels do not control our analysis in this context; rather, the substance of a court’s decision does. See Smalis, 476 U. S., at 144, n. 5; Scott, 437 U. S., at 96-97; Martin Linen, 430 U. S., at 571. The error in Rumsey could just as easily have been characterized as the erroneous addition of an element of the statutory aggravating circumstance: that the homicide be a murder-for-hire. Conversely, the error here could be viewed as a misinterpretation of the statute’s phrase “building or other real property” to exclude dwellings.[5] This is far too fine a distinction to be meaningful, and we reject the notion that a defendant’s constitutional rights would turn on *323 the happenstance of how an appellate court chooses to describe a trial court’s error.
Echoing the Michigan Supreme Court, the State and the United States, as well as the dissent, emphasize Martin Linen’s description of an acquittal as the “resolution, correct or not, of some or all of the factual elements of the offense charged.” 430 U. S., at 571 (emphasis added); see Brief for Respondent 11-17; see Brief for United States as Amicus Curiae 11-15 (hereinafter U. S. Brief); see post, at 336-338. They observe that the Double Jeopardy Clause protects against being twice placed in jeopardy for the same “of-fence,” U. S. Const., Arndt. 5, cl. 2, and they note that an offense comprises constituent parts called elements, which are facts that must be proved to sustain a conviction. See, e. g., United States v. Dixon, 509 U. S. 688, 696-697 (1993). Consequently, they argue, only if an actual element of the offense is resolved can it be said that there has been an acquittal of the offense, because “ ‘innocence of the charged offense’ cannot turn on something that is concededly not an element of the offense.” U. S. Brief 15. Because Evans’ trial ended without resolution of even one actual element, they conclude, there was no acquittal.
This argument reads Martin Linen too narrowly, and it is inconsistent with our decisions since then. Our focus in Martin Linen was on the significance of a judicial acquittal under Federal Rule of Civil Procedure 29. The District Court in that case had “evaluated the Government’s evidence and determined that it was legally insufficient to sustain a conviction.” 430 U. S., at 572. That determination of non-culpability was enough to make the acquittal akin to a jury verdict; our holding did not depend upon defining the “elements” of the offense. As we have explained, supra, at 319-320, Scott confirms that the relevant distinction is between judicial determinations that go to “the criminal defendant’s lack of criminal culpability,” and those that hold “that a defendant, although criminally culpable, may not be pun *324 ished because of a supposed” procedural error. 437 U. S., at 98. Culpability (i. e., the “ultimate question of guilt or innocence”) is the touchstone, not whether any particular elements were resolved or whether the determination of non-culpability was legally correct. Ibid., n. 11 (internal quotation marks omitted).
Perhaps most inconsistent with the State’s and United States’ argument is Burks. There we held that when a defendant raises insanity as a defense, and a court decides the “Government ha[s] failed to come forward with sufficient proof of [the defendant’s] capacity to be responsible for criminal acts,” the defendant has been acquitted because the court decided that “criminal culpability ha[s] not been established.” 437 U. S., at 10. Lack of insanity was not an “element” of Burks’ offense, bank robbery by use of a dangerous weapon. See 18 U. S. C. § 2113(d) (1976 ed.). Rather, insanity was an affirmative defense to criminal liability. Our conclusion thus depended upon equating a judicial acquittal with an order finding insufficient evidence of culpability, not insufficient evidence of any particular element of the offense.[6]
In the end, this case follows those that have come before it. The trial court’s judgment of acquittal resolved the question of Evans’ guilt or innocence as a matter of the sufficiency of the evidence, not on unrelated procedural grounds. That judgment, “however erroneous” it was, precludes re-prosecution on this charge, and so should have barred the State’s appeal as well. Sanabria, 437 U. S., at 69.
*325 H-Í f—1 1—1
A
The State, supported by the United States, offers three other reasons why the distinction drawn by the court below should be maintained. None persuades us.
To start, the State argues that unless an actual element of the offense is resolved by the trial court, the only way to know whether the court’s ruling was an “acquittal” is to rely upon the label used by the court, which would wrongly allow the form of the trial court’s action to control. Brief for Respondent 17-18, 21-22. We disagree. Our decision turns not on the form of the trial court’s action, but rather whether it “serve[s]” substantive “purposes” or procedural ones. Scott, 437 U. S., at 98, n. 11. If a trial court were to announce, midtrial, “The defendant shall be acquitted because he was prejudiced by preindictment delay,” the Double Jeopardy Clause would pose no barrier to reprosecution, notwithstanding the “acquittal” label. Cf. Scott, 437 U. S. 82. Here we know the trial court acquitted Evans, not because it incanted the word “acquit” (which it did not), but because it acted on its view that the prosecution had failed to prove its case.
Next, the State and the United States fear that if the grounds for an acquittal are untethered from the actual elements of the offense, a trial court could issue an unreviewable order finding insufficient evidence to convict for any reason at all, such as that the prosecution failed to prove “that the structure burned [was] blue.” Brief for Respondent 16-17; U. S. Brief 15. If the concern is that there is no limit to the magnitude of the error that could yield an acquittal, the response is that we have long held as much. See supra, at 318. If the concern is instead that our holding will make it easier for courts to insulate from review acquittals that are granted as a form of nullification, see Brief for Respondent 30, n. 58, we reject the premise. We presume here, as in *326 other contexts, that courts exercise their duties in good faith. Cf. Harrington v. Richter, 562 U. S. 86, 103 (2011).
Finally, the State suggests that because Evans induced the trial court’s error, he should not be heard to complain when that error is corrected and the State wishes to retry him. Brief for Respondent 32-33; cf. id., at 5-9. But we have recognized that “most [judgments of acquittal] result from defense motions,” so “[t]o hold that a defendant waives his double jeopardy protection whenever a trial court error in his favor on a midtrial motion leads to an acquittal would undercut the adversary assumption on which our system of criminal justice rests, and would vitiate one of the fundamental rights established by the Fifth Amendment.” Sanabria, 437 U. S., at 78 (citation omitted).[7] It is true that when a defendant persuades the court to declare a mistrial, jeopardy continues and retrial is generally allowed. See United States v. Dinitz, 424 U. S. 600 (1976). But in such circumstances the defendant consents to a disposition that contemplates reprosecution, whereas when a defendant moves for acquittal he does not. See Sanabria, 437 U. S., at 75.
The United States makes a related argument. It contends that Evans could have asked the court to resolve whether nondwelling status is an element of the offense before jeopardy attached, so having elected to wait until trial was underway to raise the point, he cannot now claim a double jeopardy violation. U. S. Brief 22-25. The Government relies upon Lee v. United States, 432 U. S. 23 (1977), in which the District Court dismissed an indictment midtrial because it had failed to allege the required intent element of the offense. We held that retrial on a corrected indictment was not barred, because the dismissal was akin to a mistrial, not *327 an acquittal. This was clear because the District Court had separately denied the defendant’s motion for judgment of acquittal, explaining that the defendant “‘has been proven [guilty] beyond any reasonable doubt in the world/” while acknowledging that the error in the indictment required dismissal. Id., at 26-27. Because the defendant “invited the court to interrupt the proceedings before formalizing a finding on the merits” by raising the indictment issue so late, we held the principles governing a defendant’s consent to mistrial should apply. Id., at 28 (citing Dinitz, 424 U. S. 600).
The Government suggests the situation here is “functionally similar,” because “identifying the elements of an offense is a necessary step in determining the sufficiency of a charging document.” U. S. Brief 23. But we cannot ignore the fact that what the trial court actually did here was rule on the sufficiency of the State’s proof, not the sufficiency of the information filed against him. Lee demonstrates that the two need not rise or fall together. And even if the Government is correct that Evans could have challenged the charging document on the same legal theory he used to challenge the sufficiency of the evidence, it matters that he made only the latter motion, a motion that necessarily may not be made until trial is underway. Evans cannot be penalized for requesting from the court a ruling on the merits of the State’s case, as the Michigan Rules entitled him to do; whether he could have also brought a distinct procedural objection earlier on is beside the point.
B
In the alternative, the State and the United States ask us to reconsider our past decisions. Brief for Respondent 34-56 (suggesting overruling our cases since at least Fong Foo); U. S. Brief 27-32 (suggesting overruling Smith, Rumsey, and Smalis).[8] We declined to revisit our cases when the United *328 States made a similar request in Smalis. 476 U. S., at 144; see Brief for United States as Amicus Curiae in Smalis v. Pennsylvania, O. T. 1985, No. 85-227, pp. 19-25. And we decline to do so here.
First, we have no reason to believe the existing rules have become so “unworkable” as to justify overruling precedent. Payne v. Tennessee, 501 U. S. 808, 827 (1991). The distinction drawn in Scott has stood the test of time, and we expect courts will continue to have little “difficulty in distinguishing between those rulings which relate to the ultimate question of guilt or innocence and those which serve other purposes.” 437 U. S., at 98, n. 11 (internal quotation marks omitted). See, e. g., United States v. Dionisio, 503 F. 3d 78, 83-88 (CA2 2007) (collecting cases); 6 W. LaFave, J. Israel, N. King, & O. Kerr, Criminal Procedure § 25.3(a), p. 629 (3d ed. 2007) (same).
Second, the logic of these cases still holds. There is no question that a jury verdict of acquittal precludes retrial, and thus bars appeal of any legal error that may have led to that acquittal. See Ball, 163 U. S., at 671. So, had the trial court here instructed the jury that it must find the burned structure was not a dwelling in order to convict, the jury would have acquitted Evans accordingly; “‘[a] jury is presumed to follow its instructions.’” Blueford v. Arkansas, 566 U. S. 599, 606 (2012) (quoting Weeks v. Angelone, 528 U. S. 225, 234 (2000)). And that would have been the end of the matter. From that premise, Fong Foo’s holding follows: If a trial court instead exercises its discretion to direct a jury to return a verdict of acquittal, jeopardy also terminates notwithstanding any legal error, because there too it is the jury that returns an acquittal. And from there, Martin Linen’s conclusion is unavoidable: It should make no difference *329 whether the court employs the formality of directing the jury to return an acquittal or whether the court enters an acquittal itself. Sanabria, Rumsey, Smalis, and Smith merely apply Fong Foo and Martin Linen in tandem: If a trial court makes an antecedent legal error (as in Fong Foo), and then grants a judgment of acquittal rather than directing the jury to acquit (as in Martin Linen), the result is an acquittal all the same.
In other words, there is no way for antecedent legal errors to be reviewable in the context of judicial acquittals unless those errors are also reviewable when they give rise to jury acquittals (contrary to the settled understanding that a jury verdict of acquittal is unreviewable), or unless we distinguish between juries that acquit pursuant to their instructions and judicial acquittals (notwithstanding that this is a purely formal distinction). Neither option has become more attractive with time. We therefore reiterate: “[A]ny contention that the Double Jeopardy Clause must itself . . . leave open a way of correcting legal errors is at odds with the well-established rule that the bar will attach to a preverdict acquittal that is patently wrong in law.” Smith, 543 U. S., at 473.
Finally, the State and the United States object that this rule denies the prosecution a full and fair opportunity to present its evidence to the jury, while the defendant reaps a “windfall” from the trial court’s unreviewable error. Brief for Respondent 6; U. S. Brief 31-32. But sovereigns are hardly powerless to prevent this sort of situation, as we observed in Smith, 543 U. S., at 474. Nothing obligates a jurisdiction to afford its trial courts the power to grant a mid-trial acquittal, and at least two States disallow the practice. See Nev. Rev. Stat. § 175.381(1) (2011); State v. Parfait, 96-1814 (La. App. 1 Cir. 05/09/97), 693 So. 2d 1232,1242. Many jurisdictions, including the federal system, allow or encourage their courts to defer consideration of a motion to acquit until after the jury returns a verdict, which mitigates double *330 jeopardy concerns.[9] See Fed. Rule Crim. Proc. 29(b). And for cases such as this, in which a trial court’s interpretation of the relevant criminal statute is likely to prove dispositive, we see no reason why jurisdictions could not provide for mandatory continuances or expedited interlocutory appeals if they wished to prevent misguided acquittals from being entered.[10] But having chosen to vest its courts with the power to grant midtrial acquittals, the State must bear the corresponding risk that some acquittals will be granted in error.
* * *
We hold that Evans’ trial ended in an acquittal when the trial court ruled the State had failed to produce sufficient evidence of his guilt. The Double Jeopardy Clause thus bars retrial for his offense and should have barred the State’s appeal. The judgment of the Supreme Court of Michigan is

Reversed.

 Michigan Comp. Laws §750.72 (1981), “Burning dwelling house,” provides: “Any person who wilfully or maliciously burns any dwelling house, either occupied or unoccupied, or the contents thereof, whether owned by himself or another, or any building within the curtilage of such dwelling house, or the contents thereof, shall be guilty of a felony, punishable by imprisonment in the state prison not more than 20 years.”
And §750.73, “Burning of other real property,” provides: “Any person who wilfully or maliciously burns any building or other real property, or the contents thereof, other than those specified in the next preceding section of this chapter, the property of himself or another, shall be guilty of a felony, punishable by imprisonment in the state prison for not more than 10 years.”

 In other words, the pattern jury instructions were incorrect. The State later revised them. See 288 Mich. App. 410, 416, n. 3, 794 N. W. 2d 848, 852, n. 3 (2010).

 Compare 491 Mich. 1, 810 N. W. 2d 535 (2012) (case below), and State v. Korsen, 138 Idaho 706, 716-717, 69 P. 3d 126, 136-137 (2003) (same conclusion), and United States v. Maker, 751 F. 2d 614, 624 (CA3 1984) (same), with Carter v. State, 365 Ark. 224, 228, 227 S. W. 3d 895, 898 (2006) (rejecting this distinction), and State v. Lynch, 79 N. J. 327, 337-343, 399 A. 2d 629, 634-637 (1979) (holding double jeopardy barred retrial after trial court erroneously required extra element).

 Under Bullington v. Missouri, 451 U. S. 430 (1981), a capital defendant is “acquitted” of the death penalty if, at the end of a separate sentencing proceeding, the factfinder concludes that the prosecution has failed to prove required additional facts to support a sentence of death. Thus in Rumsey, the trial court’s initial “judgment, based on findings sufficient to establish legal entitlement to the life sentence, amounts to an acquittal on the merits and, as such, bars any retrial of the appropriateness of the death penalty.” 467 U. S., at 211.

 Indeed, it is possible that this is what the trial court thought it was doing, not articulating an additional element. The statute criminalizes burning “any building or other real property,... other than those specified in” the previous section, which criminalizes the burning of a dwelling house. Mich. Comp. Laws § 750.73. In light of the statute’s phrasing, the trial court interpreted “building or other real property” to be exclusive of the type of property described in §750.72, although the Michigan courts have explained that the term is actually meant to be inclusive. So the trial court decision could be viewed as having given the statutory “building” element an unduly narrow construction (by limiting it to nondwell-ings), just as the trial court in Rumsey gave the pecuniary-gain provision an unduly narrow construction (by limiting it to contract killings). Nevertheless, we accept the parties’ and the Michigan courts’ alternative characterization of the trial court’s error as the “addition” of an extraneous element. Our observation simply underscores how malleable the distinction adopted by the Michigan Supreme Court, and defended by the State and the United States, can be. And it belies the dissent’s suggestion, post, at 340 (opinion of Alito, J.), that drawing this distinction is “quite easy” here, and that the basis for the trial court’s ruling could not be subject to “real dispute.”

 To account for Burks, the United States posits that, “[a]s used in [its] brief, the ‘elements’ of an offense encompass legally recognized defenses that would negate culpability.” U. S. Brief 11, n. 3. So too would the dissent hold that, “as used in this opinion, the ‘elements’ of an offense include legally recognized affirmative defenses that would negate culpability.” Post, at 337, n. 2. Rather than adopt a novel definition of the word “element” to mean “elements and affirmative defenses,” and then promptly limit that novel definition to these circumstances, we prefer to read Burks for what it says, which is that the issue is whether the bottom-line question of “criminal culpability” was resolved. 437 U. S., at 10.

 The dissent says that “defense counsel fooled the judge,” post, at 335, but surely that charge is not fair. Nothing suggests counsel exceeded the permissible bounds of zealous advocacy on behalf of his client. Counsel presented a colorable legal argument, and marshaled persuasive authority: Michigan’s own criminal jury instructions, which, at the time, supported his position. See supra, at 316, 317, n. 2.

 The dissent’s true gripe may be with these cases as well, rather than our result here, which, we have explained, follows inevitably from them. See post, at 334 (noting “how far [our cases] have departed from the common-law principles that applied at the time of the founding”); compare post, at *328 341 (“Permitting retrial in these egregious eases is especially appropriate”), with Fong Foo v. United States, 369 U. S. 141, 143 (1962) (per curiam) (according finality to even those acquittals “based upon an egregiously erroneous foundation”).

 If a court grants a motion to acquit after the jury has convicted, there is no double jeopardy barrier to an appeal by the government from the court’s acquittal, because reversal would result in reinstatement of the jury verdict of guilt, not a new trial. United States v. Wilson, 420 U. S. 332 (1975).

 Here, the prosecutor twice asked the court for a recess to review the Michigan statutes and to discuss the question with her supervisor. 491 Mich., at 7, 810 N. W. 2d, at 538-539. If the trial court’s refusal was ill advised, that is a matter for state procedure to address, but it does not bear on the double jeopardy consequences of the acquittal that followed.