[Cite as *State v. Stargell*, 2021-Ohio-2057.]

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## MONTGOMERY COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | Appellate Case No. 28928 |
| | : | |
| v. | : | Trial Court Case No. 2019-CR-2827 |
| | : | |
| ROBERT STARGELL | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 18th day of June, 2021.

. . . . . . . . . . .

MATHIAS H. HECK, JR., by ANDREW T. FRENCH, Atty. Reg. No. 0069384, Assistant Prosecuting Attorney, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, Dayton, Ohio 45422
        Attorney for Plaintiff-Appellant

ADAM J. ARNOLD, Atty. Reg. No. 0088791, 120 West Second Street, Suite 1717, Dayton, Ohio 45402
        Attorney for Defendant-Appellee

. . . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Plaintiff-Appellant the State of Ohio appeals from a trial court order granting Defendant-Appellee Robert Stargell's motion to modify the jury's verdict in his criminal trial. According to the State, the trial court abused its discretion and erred in applying Crim.R. 33(A)(4) when it modified the jury's verdict from a conviction for felonious assault to a conviction for assault. We agree.

**{¶ 2}** However, we conclude that the State is not entitled to pursue a discretionary appeal under R.C. 2945.67(A), and that our prior allowance of the State's appeal, therefore, was improvidently granted. Specifically, the order modifying the verdict was a final verdict from which the State may not appeal. Accordingly, the appeal will be dismissed, and our prior decision giving the State leave to appeal will be vacated.

## I. Facts and Course of Proceedings

**{¶ 3}** On September 19, 2019, an indictment was filed charging Stargell with the following offenses: one count of felonious assault (deadly weapon), a second-degree felony; one count of recklessly discharging a firearm on or near prohibited premises (serious physical harm), a third-degree felony; one count of having weapons under disability (prior drug conviction), a third-degree felony; one count of having weapons under disability (prior offense of violence), a third-degree felony; and one count of violation of a protection order, a first-degree misdemeanor. The felonious assault and reckless discharge of a firearm counts also included firearm specifications.

**{¶ 4}** The charges arose from an incident that occurred on August 23, 2019, on Gramont Avenue in Dayton, Ohio. Previously, in June 2019, Stargell and Jerita Pooler had ended their romantic relationship. About two months later, Jerita began dating

Robert West. At the time of the incident, Jerita, West, and Jerita's son, C.H., were staying at the home of Jerita's stepmother, Irmela Pooler. Transcript of Proceedings (Jury Trial) ("Tr."), p. 33-35 and 116-117.

{¶ 5} After getting off work on August 23, 2019, Jerita was sitting outside with Irmela, C.H., and West. At that time, Jerita saw a Facebook video that concerned her. Stargell had posted the video and had called Jerita and West "bitches," "clowns," and other names. *Id.* at p. 39-40. Subsequently, around 5:00 or 6:00 p.m., Stargell drove by the house but did not stop. *Id.* at p. 54-55.

{¶ 6} Later in the evening, Jerita was sitting outside in her car, which was parked in the driveway. It was dark outside. Jerita was sitting in the driver's seat, West was in the front passenger seat, and C.H. was in the back seat. *Id.* at p. 45, 46, 55-56, 60, and 71. At that time, Stargell approached in a different car, and someone else was driving. When the car pulled up, Stargell had a mask over his face and pointed a gun at Jerita. It looked like a white gun with a red light, like a laser light, but she did not see the handle. *Id.* at p. 45, 56, and 59.

{¶ 7} The laser was pointed at Jerita, and she heard Stargell say, "No, not her." The car pulled down a little bit, to where West was sitting, and the laser was pointed at West. Tr. at p. 58 and 60. The car then pulled further down the street. At that point, Jerita got out of her car. West also got out of the car, to try and calm Jerita down. *Id.* at p. 61. However, the keys were still in Jerita's car, and C.H. took off in the car, following the car in which Stargell was riding. *Id.* at p. 61.

{¶ 8} Jerita stood outside at first, and then ran into the house, shouting for her stepmother to call the police. *Id.* at p. 61-62. Both Jerita and Irmela called 911. *Id.*

Five or ten minutes later, C.H. returned and parked the car at a 45-degree angle in front of the driveway. *Id.* at p. 47, 63, and 89. Two shots were then heard being fired in the alley behind the house, but no one saw who fired the shots. *Id.* at p. 48-50, 67, 91, 92, 104, 105, and 122.

{¶ 9} At this point, Jerita was outside, standing in the grass by the front door, and West was by Jerita's car. Stargell emerged on foot from the alley, looked at Jerita, and said, "I oughta shoot you, bitch." *Id.* at p. 47, 65, and 92. He then said, "Where that n****r at?" *Id.* at p. 65 and 91-92. Jerita told Stargell that he was "over there," and Stargell began chasing West around Jerita's car. *Id.*

{¶ 10} When the chase began, West was at the driver's door of the car. The sunroof and all the car windows were down. Stargell walked up to the passenger side of the car, with his gun cocked, and said, "Bitch, didn't I tell you I was going to kill you." Tr. at p. 93-94. West ducked, and Stargell shot at him through the passenger window. *Id.* at p. 95. According to both West and Jerita, C.H. was across the street videoing everything when this happened. West insisted that the video showed the shooting. *Id.* at p. 51, 65, 77, 95, 102, and 106. However, the video did not show any shooting. *Id.* at p. 106-109. West was also unable to identify the color of the gun, although Jerita testified that it was the same white gun she saw Stargell with earlier. *Id.* at p. 69 and 102.

{¶ 11} According to Jerita and West, after the first shot, Stargell chased West around the car several times. During this process, the gun jammed, and Stargell then left on foot. *Id.* at p. 48, 51, 65, 74, 95, and 96-97.

{¶ 12} Following the 911 calls, Dayton Police Officer Bryan Camden and other

officers arrived at the scene. When Camden arrived, he saw two men (Stargell and C.H.) in the middle of the street, yelling, screaming, and walking back and forth. They were very angry. *Id.* at p. 135. After Camden separated the men, he spoke with Jerita, who told him what had happened. Camden directed other officers to locations to look for evidence. *Id.* at p. 137.

{¶ 13} While Camden spoke with Jerita, other officers were walking around, checking for evidence. Three officers were looking for shell casings, but they did not find any. No one found any physical evidence at the scene. *Id.* at p. 136 and 138-139. The officers looked with flashlights in the driveway and in the shed and garage area, but found nothing. *Id.* at p. 139. To Camden's knowledge, no officers found bullet holes in Jerita's vehicle, on the house, or on a residence across the street. No bullet holes were found anywhere in the vicinity. *Id.* at p. 141.

{¶ 14} That evening, Camden contacted his supervisor to ask for resources to use in helping to find shell casings. The Bureau of Alcohol, Tobacco and Firearms (ATF) has dogs that are trained to sniff out firearm-related materials, but a supervisor, rather than a street officer, must ask for this assistance. However, the ATF never responded. *Id.* at 142-143.

{¶ 15} Stargell was indicted on September 19, 2019, for felonious assault and other firearm-related violations and specifications. Following Stargell's not guilty plea, a jury trial was held on August 26 and 27, 2020. During the trial, the State presented the testimony of Jerita, West, Irmela, and Officer Camden; the defense did not call any witnesses. After hearing the testimony, the jury found Stargell guilty of felonious assault and violating the protective order but found him not guilty of the rest of the charges,

including all gun-related charges and the firearm specifications. Tr. at p. 201-202. During a sidebar, the judge noted that the verdicts were inconsistent and allowed both sides to reserve their objections or to file any motions they wished. *Id.* at p. 203-204. The judge then discharged the jury. *Id.* at p. 204-205.

{¶ 16} On September 2, 2020, Stargell filed a motion for acquittal under Crim.R. 29(C) and, in the alternative, a motion under Crim.R. 33(A)(4) to modify the verdict of felonious assault to assault. The court then set submission dates, including allowing the State to file a memorandum in response no later than September 16, 2020. However, the State did not file a response. Subsequently, on September 21, 2020, the court granted the motion to modify the verdict and reduced the felonious assault conviction to a conviction for assault, a first-degree misdemeanor. The court also set a sentencing hearing for September 29, 2020.

{¶ 17} On September 30, 2020, the court filed a judgment entry sentencing Stargell to 180 days in the Montgomery County Jail for assault, and 180 days in jail for violation of the protective order, with the terms to be served consecutively. However, since Stargell had already served 373 days in jail, the court concluded that the sentence had been satisfied. *See* Termination Entry at p. 1, and Order Granting Motion to Modify Verdict. On October 1, 2020, the State filed a notice of appeal from the judgment.

{¶ 18} The State then filed a motion with our court on October 1, 2020, asking for leave to appeal pursuant to R.C. 2945.67(A) and App.R. 5(C). We granted the State's motion on December 3, 2020. *See* Decision & Entry (Dec. 3, 2020).

II.   Discussion

{¶ 19} The State's sole assignment of error states:

The Trial Court Abused Its Discretion and Erred in Its Application of Crim.R. 33(A)(4) When It Modified the Jury's Verdict, Which Had Found Stargell Guilty of Felonious Assault.

{¶ 20} Under this assignment of error, the State makes two main points. The first is that the trial court erred because the jury verdicts were not legally inconsistent. According to the State, the jury's negative finding on the firearm specifications and other charges did not invalidate the guilty verdict for felonious assault because inconsistency in verdicts arises only when juries give inconsistent responses to the same count. In addition, with respect to this argument, the State stresses that the not guilty finding on the specification to felonious assault could not change the finding on the principal charge because a specification is considered after and in addition to the finding of guilt on the principal charge.

{¶ 21} The State's second argument (also used in connection with its first argument) is that the trial court twice overruled Stargell's Crim.R. 29 motion for acquittal. Because the review standards for new trial motions and Crim.R. 29 motions are the same, the State argues that there is no legitimate reason why the same evidence was not sufficient for purposes of overruling Stargell's motion to modify the verdict.

{¶ 22} Before we address the State's arguments, we must consider whether we have jurisdiction over this appeal. This is an issue that we can raise on our own initiative. *Barton v. Barton*, 2017-Ohio-980, 86 N.E.3d 937, ¶ 45 (2d Dist.); *State v. Morris*, 2d Dist. Clark No. 07-CA-112, 2008-Ohio-4744, ¶ 17. Specifically, we would not have jurisdiction to entertain the appeal if the trial court issued a final verdict. *State v. Bunce*, 10th Dist.

Franklin No. 92AP-783, 1993 WL 55186, *1 (Mar. 2, 1993), citing *State ex rel. Yates v. Court of Appeals for Montgomery Cty.*, 32 Ohio St.3d 30, 512 N.E.2d 343 (1987).

{¶ 23} In the case before us, the State moved for leave to appeal under R.C. 2945.67, which provides, in pertinent part, that:

> (A)   A prosecuting attorney, village solicitor, city director of law, or the attorney general may appeal * * * by leave of the court to which the appeal is taken any other decision, except the final verdict, of the trial court in a criminal case or of the juvenile court in a delinquency case.

{¶ 24} The Supreme Court of Ohio has held that judgments of acquittal under both Crim.R. 29(A) and (C) are final verdicts that the State may not appeal pursuant to R.C. 2945.67(A).   *See Yates* at 32-33, and *State v. Keeton*, 18 Ohio St.3d 379, 481 N.E.2d 629 (1985).   In *Yates*, the court rejected the State's attempt to distinguish between these two types of acquittals.   In this regard, the court stressed that "[t]he judgment of acquittal in the case *sub judice*, though entered after a jury verdict and upon the authority of Crim.R. 29(C), was grounded upon insufficiency of evidence.   It is a factual determination of innocence and as much a final verdict as any judgment of acquittal granted pursuant to Crim.R. 29(A)."   (Footnote omitted.)   *Id.*

{¶ 25} The trial court's decision in the case before us was not issued under Crim.R. 29, but was based on Crim.R. 33(A), which provides, in pertinent part, that:

> A new trial may be granted on motion of the defendant for any of the following causes affecting materially his substantial rights:
>
> * * *
>
> (4) That the verdict is not sustained by sufficient evidence or is

contrary to law. If the evidence shows the defendant is not guilty of the degree of crime for which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict or finding accordingly, without granting or ordering a new trial, and shall pass sentence on such verdict or finding as modified.

{¶ 26} In a recent decision, the Supreme Court of Ohio declined to "extend *Yates* and hold that a Crim.R. 33(A)(4) new-trial order based on insufficient evidence is a 'final verdict' under R.C. 2945.67(A) and thus cannot be appealed." *State v. Ramirez*, 159 Ohio St.3d 426, 2020-Ohio-602, 151 N.E.3d 598, ¶ 20.

{¶ 27} In *Ramirez*, a jury found the defendant guilty of voluntary manslaughter. *Id.* at ¶ 4. During trial, Ramirez twice moved for acquittal under Crim.R. 29(A), arguing that there was a lack of evidence that he had acted "under the influence of sudden passion or a sudden fit of rage" or that the victim had provoked his response. *Id.* at ¶ 5. The trial court denied both motions, based on *State v. Rhodes*, 63 Ohio St.3d 613, 590 N.E.2d 261 (1992), which had said, "in dicta, that when a defendant is charged with voluntary manslaughter and not murder, 'neither party is required to establish either of the mitigating circumstances.' Instead, 'the court presumes (to the benefit of the defendant) the existence of one or both of the mitigating circumstances as a result of the prosecutor's decision to try the defendant on the charge of voluntary manslaughter rather than murder.' " *Id.*, quoting *Rhodes* at 618.

{¶ 28} After the trial, Ramirez filed a motion for a new trial under Crim.R. 33(A)(4), again arguing that there was "insufficient evidence of sudden passion and provocation." *Id.* at ¶ 6. This time, the trial court decided not to apply *Rhodes* and granted the motion

for a new trial. *Id.* The State then appealed. Although the court of appeals initially granted the State leave to appeal, it then refused to consider the appeal on its merits, based on both double jeopardy and R.C. 2945.67(A). *Id.* at ¶ 7. Concerning R.C. 2945.67(A), the court of appeals "reasoned that an order granting a new trial based on insufficient evidence was functionally an acquittal and hence, a final verdict that could not be appealed." *Id.*

{¶ 29} After the State again appealed, the Supreme Court of Ohio addressed both double jeopardy and R.C. 2945.67(A). Regarding double jeopardy, the court rejected the lower court's conclusion that Ramirez could not be retried and that double jeopardy protection barred the appeal. *Ramirez*, 159 Ohio St.3d 426, 2020-Ohio-602, 151 N.E.3d 598, at ¶ 15. Instead, the court held that " '[i]f a court grants a motion to acquit after the jury has convicted, there is no double jeopardy barrier to an appeal by the government from the court's acquittal, because reversal would result in reinstatement of the jury verdict of guilt, not a new trial.' " *Id.*, quoting *Evans v. Michigan*, 568 U.S. 313, 329, 133 S.Ct. 1069, 185 L.Ed.2d 124 (2013). Thus, the court of appeals could review the sufficiency issue and could either reinstate the original jury verdict or impose a lesser-included conviction. *Id.*

{¶ 30} However, a different analysis applied in considering R.C. 2945.67(A), because that statute "places independent limits on the state's ability to pursue a criminal appeal." *Id.* at ¶ 17. In this context, the Supreme Court of Ohio stated that "[t]he determinative issue here is whether an order granting a motion for a new trial based on insufficiency of the evidence is a *final verdict.*" (Emphasis sic.). *Id.* The court noted its prior decisions in *Keeton* and *Yates*, and acknowledged *Yates's* explicit rejection of "the

idea that 'final verdict' should be understood as limited to cases where any relief on appeal would be blocked by double-jeopardy principles – as would be the case with a pre-jury-verdict Crim.R. 29(A) judgment of acquittal." *Id.* at ¶ 19, citing *Yates*, 32 Ohio St.3d at 30, 512 N.E.2d 343.

{¶ 31} As noted, the court then declined to extend *Yates* to orders granting new trials under Crim.R. 33. The court first reasoned that "a grant of a new trial is not a 'final verdict.' " *Id.* at ¶ 21. In this vein, the court elaborated that "[p]lainly, such an order is not a verdict. And it certainly cannot be a 'final verdict,' because granting such a motion contemplates further proceedings in the form of a new trial." *Id.* In addition, the court concluded that classifying a new trial order as a "final verdict" ignored the meaning of the term when R.C. 2945.67 was enacted in 1973. *Id.* at ¶ 22-23.

{¶ 32} Specifically, "[t]he United States Supreme Court did not establish that the double-jeopardy protection prohibited retrial after a new-trial order based on insufficient evidence until its decision in *Hudson* in 1981." *Ramirez*, 159 Ohio St.3d 426, 2020-Ohio-602, 151 N.E.3d 598, at ¶ 23, citing *Hudson v. Louisiana*, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981). The Supreme Court of Ohio therefore held that:

> As it would have been understood at the time R.C. 2945.67 was enacted, a Crim.R. 33(A)(4) new-trial order would have been followed by what the plain language of the rule suggests - a new trial. Since an order granting a motion for a new trial would have been followed by a new trial, it would not have been final in any meaningful sense, and hence it would not be a final verdict under R.C. 2945.67.

*Ramirez* at ¶ 24.

{¶ 33} Notably, while *Ramirez* discussed the part of Crim.R. 33(A)(4) that lets trial courts grant new trials when the verdict is not sustained by sufficient evidence, it did not address the portion of the rule that permits a "trial court to modify the verdict or finding accordingly, without granting or ordering a new trial * * *." *Ramirez* also did not overrule *Yates* or any of its prior authority.

{¶ 34} Under the reasoning in *Yates*, as well as *Ramirez*, the order here was clearly a final verdict. The trial court's decision stated that the jury's finding of guilt on the felonious assault charge was not supported by sufficient evidence. The court then modified the verdict, sentenced Stargell, and filed a termination entry. Unlike the grant of a new trial, the order modifying the verdict left nothing left to be done; no new trial would have followed. And, like the post-jury acquittal in *Yates*, the trial court's modification of the verdict was authorized by the applicable criminal rule and was based on sufficiency of the evidence. *Yates*, 32 Ohio St.3d at 32, 512 N.E.2d 343. Therefore, *Ramirez* does not impact the result here.

{¶ 35} *Ramirez* was issued on February 25, 2020. To date, only two cases have cited it, and neither has done so in any pertinent context. *See State v. O'Connell*, 2020-Ohio-1369, 153 N.E.3d 771, ¶ 36 (1st Dist.) (citing a general statement in *Ramirez* about double jeopardy), and *State v. Keim*, 11th Dist. Trumbull No. 2020-T-0050, 2021-Ohio-793, ¶ 11 (finding the defendant's citation of *Ramirez* irrelevant to a subject-matter jurisdiction issue).

{¶ 36} We note that courts have allowed the State leave to appeal in some cases that involved judgments of acquittal However, the issues in question have concerned matters like "evidentiary rulings and rulings on issues of law, because those rulings fall

within the language of 'any other decision, except the final verdict,' in R.C. 2945.67(A)." *State v. Pawelski*, 178 Ohio App.3d 426, 2008-Ohio-5180, 898 N.E.2d 85, ¶ 11 (2d Dist.), citing *State v. Arnett*, 22 Ohio St.3d 186, 489 N.E.2d 284 (1986), and *State v. Bistricky*, 51 Ohio St.3d 157, 555 N.E.2d 644 (1990). Nonetheless, courts have rejected the State's attempt to appeal where the State is simply appealing the final resolution of the case, not the above types of issues. *E.g., State v. Roddy*, 8th Dist. Cuyahoga No. 88759, 2007-Ohio-4015, ¶ 13. *Compare City of Blue Ash v. Price*, 2018-Ohio-1062, 98 N.E.3d 345, ¶ 7 (1st Dist.) (allowing appeal where a city admitted it could not appeal the not guilty finding concerning an ordinance violation, but wanted review of whether the ordinance was constitutional).

**{¶ 37}** Our review of the State's brief indicates the State is not raising any evidentiary or substantive legal issues. Instead, the State simply asks that we vacate the trial judge's decision and reinstate the jury verdict. *See* Appellant's Brief, p. 8. This is because the State contends the jury verdict was based on sufficient evidence and because it speculates that the jury may not have followed the trial court's instructions. *Id.*

**{¶ 38}** Accordingly, this appeal is not properly before us because the State cannot appeal from the final verdict under R.C. 2945.67(A). As a result, the appeal must be dismissed, and our prior decision allowing a discretionary appeal must be vacated.

III.   Conclusion

**{¶ 39}** Because we lack jurisdiction over the appeal, the appeal is dismissed. In addition, the decision of December 3, 2020, allowing the State's appeal is vacated.

. . . . . . . . . . . . .

TUCKER, P.J. and EPLEY, J., concur.

Copies sent to:

Mathias H. Heck, Jr.
Andrew T. French
Adam J. Arnold
Hon. Mary Lynn Wiseman