PRESENT:  All the Justices

COMMONWEALTH OF VIRGINIA

v.  Record No. 220715

DANJUAN ANTONIO McBRIDE

OPINION BY
JUSTICE STEPHEN R. McCULLOUGH
October 19, 2023

FROM THE COURT OF APPEALS OF VIRGINIA

This appeal presents the question of whether Rule 3A:15 or the Double Jeopardy Clause restricts a trial court's authority to reconsider a motion to strike that the court erroneously granted.  We conclude that Rule 3A:15 does not preclude the court from reconsidering a motion to strike that was erroneously granted.  As for the Double Jeopardy Clause, it certainly imposes some limitations on a trial court's authority to reconsider a motion to strike.  Those limitations, however, do not apply here.  Consequently, we reverse the judgment of the Court of Appeals.

## BACKGROUND

Danjuan Antonio McBride was indicted for possession of cocaine with the intent to distribute, third or subsequent offense, and possession of heroin and Furanylfentanyl[1] with the intent to distribute, third or subsequent offense.  Before trial, the Commonwealth filed a motion disclosing its intention to introduce into evidence prior convictions from Baltimore, Maryland.  It sought a pretrial ruling that these convictions were admissible.

At a hearing on the motion, the Commonwealth explained that it requested records from Maryland to establish the defendant's prior convictions, and, in response, it received a

---

[1] Furanylfentanyl is a derivative of the synthetic opioid, Fentanyl. Fentanyl is 80 to 100 times more potent than morphine, and Furanylfentanyl is slightly less potent than Fentanyl. *Commonwealth v. Mulkin*, 228 A.3d 913, 915 n.5 (Pa. Super. Ct. 2020).

disc with approximately 250 pages. The disc was certified by the Maryland State Archives. Defense counsel objected on a number of grounds. The circuit court ruled that the documents were admissible, concluding that they were properly authenticated under Virginia law. The Commonwealth observed that "I just want to make sure that I can introduce additional documents to the jury if there's a question about this being a different person." The circuit court responded, "I guess we will see what comes up."

At a jury trial, the Commonwealth introduced the records into evidence. After the Commonwealth rested, McBride made a motion to strike the evidence, arguing among other things that the Commonwealth failed to establish qualifying prior offenses because the evidence did not prove that the defendant was the person listed on the Maryland records. Defense counsel pointed out that the records were not consistent on a birth date, and in places listed a different name. The records sometimes list "Tony Brown" as an alias for Danjuan McBride, while another record identifies Tony Brown as the defendant. Some records list McBride's birthdate as March 7, 1979, whereas other records list a birthdate of March 7, 1980. The Commonwealth responded that the defendant's name was somewhat unique and that the records contained additional identifiers that linked them to the defendant. In addition, the Commonwealth contended that the discrepancy on the birthdate in the records appeared to be a typographical error, and that the defendant's use of an alias did not change the fact that he was the person identified by the Maryland records.

The circuit court stated that it would grant the motion to strike with respect to whether the Commonwealth had established the defendant's two prior convictions. The Commonwealth immediately responded that it had a "strong exception to that ruling." It argued that it had relied on the trial court's pre-trial ruling that connected the Maryland

2

records to the defendant, that the admissibility of the records was an issue for the court rather than the jury, and that the records would not be admissible into evidence unless they were sufficient to raise a jury question about the defendant's identity as the person who was convicted of the prior offenses in Maryland. The Commonwealth noted that it could not introduce McBride's entire criminal record, but that additional records would further establish that McBride was the person identified in the Maryland records. The court then stated that it would allow the prosecution to reopen its case to address the issue. Defense counsel objected.

The Commonwealth proceeded to introduce an additional court record – a recognizance form from Fairfax County that contained the same address as the address listed on the Maryland records. The prosecution then rested. The circuit court explained that there appeared to be a "genuine misunderstanding" about the prior records. The court then stated that it was reversing itself on the motion to strike, reasoning that there was sufficient evidence in the Maryland records for the jury to conclude that the defendant was the person listed in those records. At that point, the defendant had not presented any evidence or taken any other steps such as releasing witnesses.

The jury found the defendant guilty of both charges.

McBride appealed to the Court of Appeals. By published opinion, a panel of that court reversed the convictions. The Court of Appeals concluded that, once a court grants a motion to strike, Rule 3A:15 requires the court to enter an order of acquittal and the court is foreclosed from reconsidering its decision. *McBride v. Commonwealth*, 75 Va. App. 556, 572-77 (2022). We awarded the Commonwealth an appeal from this decision.

ANALYSIS

I.  RULE 3A:15 DOES NOT PREVENT A COURT FROM RECONSIDERING ITS RULING ON A MOTION TO STRIKE.

We review the Court of Appeals' interpretation of the rules of this Court *de novo*. *LaCava v. Commonwealth*, 283 Va. 465, 471 (2012). At the time of McBride's trial, Rule 3A:15 provided in relevant part:

> *Motion to Strike Evidence.* – After the Commonwealth has rested its case or at the conclusion of all the evidence, the court on motion of the accused *may* strike the Commonwealth's evidence if the evidence is insufficient as a matter of law to sustain a conviction . . . .
>                             . . . .
>
> *Judgment of Acquittal or New Trial.* – The court shall enter a judgment of acquittal if it strikes the evidence or sets aside the verdict because the evidence is insufficient as a matter of law to sustain a conviction. The court shall grant a new trial if it sets aside the verdict for any other reason.[2]

In construing this rule, we note that courts commonly consider background principles when interpreting rules or statutes, even if those principles are not mentioned in the rule or statute. To cite but a few examples, we rely on the rule of lenity when interpreting a criminal statute, even though the statute does not mention the rule. *Morgan v. Commonwealth*, 301 Va. 476, 483 (2022). We presume that the legislature did not repeal a statute by implication. *Sexton v. Cornett*, 271 Va. 251, 257 (2006). We also presume that a statute is not to be given retroactive effect "unless a contrary legislative intent is manifest." *Berner v. Mills*, 265 Va. 408, 413 (2003). And we examine a local government's powers to enact an ordinance through

---

[2] After McBride's trial, this Court amended a number of rules, including Rule 3A:15, to replace the word "shall" with the word "must" as part of an effort to clarify the use of the word "shall." The change was intended as a clarifying amendment and does not alter the meaning of the rules.

the lens of Dillon's Rule. *City of Richmond v. Confrere Club of Richmond, Virginia, Inc.*, 239 Va. 77, 79-80 (1990).

One of these background principles is the recognized authority of a court to reconsider an erroneous or flawed decision. *Lewis v. Commonwealth*, 295 Va. 454, 467 n.3 (2018) (trial court may reconsider its judgment of conviction "as it may reconsider any ruling" provided that it does so within the time permitted by the rules); *see also Everett v. Tawes*, 298 Va. 25, 35 (2019) (noting the power of a court to correct interlocutory orders). The power to reconsider is often described as an inherent power of a court. The United States Supreme Court has observed that "[i]t is a power inherent in every court of justice so long as it retains control of the subject-matter and of the parties, to correct that which has been wrongfully done by virtue of its process." *United States v. Morgan*, 307 U.S. 183, 197 (1939) (cleaned up).[3] The power to decide carries with it the power to reconsider as a necessary adjunct. That power, of course, can be constrained by rules or statutes that limit its timing or scope.

Rules of evidence and procedure commonly instruct a court that it must do something. Those rules are almost always silent about a court's ability to reconsider. The power to reconsider nevertheless remains present, even if it is not mentioned in the text of the rule.

---

[3] State courts have echoed this view of judicial power. *See, e.g., Steele v. Stonington*, 622 A.2d 551, 553 n.4 (Conn. 1993) ("[I]t is the inherent authority of every court, as long as it retains jurisdiction, to reconsider a prior ruling . . . . If a court is not convinced that its initial ruling is correct, then in the interests of justice it should reconsider the order, provided it retains jurisdiction over the subject matter and the parties."); *People v. Mink*, 565 N.E.2d 975, 978 (Ill. 1990) ("A court in a criminal case has inherent power to reconsider and correct its own rulings, even in the absence of a statute or rule granting it such authority."); *Melnick v. State Farm Mut. Auto. Ins. Co.*, 749 P.2d 1105, 1107 (N.M. 1988) (a trial court "has the inherent authority to reconsider its interlocutory orders, and it is not the duty of the trial court to perpetuate error when it realizes it has mistakenly ruled"); *State v. Davis*, 991 N.W.2d 491, 498 (Wis. 2023) ("[I]t is firmly established in Wisconsin law that a circuit court has the inherent authority to reconsider its own rulings during ongoing proceedings.").

Rule 3A:15 is typical of our rules in that it instructs a court to take a particular action without expressly addressing the power of a court to reconsider.  The language of Rule 3A:15, which provides that a court "must enter a judgment of acquittal if it strikes the evidence," *presupposes* a final decision granting a motion to strike, not an initial ruling that the court then reconsiders.  A court may misspeak, or it may misapprehend the law or the evidence, and on that basis render a flawed ruling on a motion to strike.  When a court has concluded that its earlier ruling on a motion to strike was erroneous or flawed, it may timely reconsider its decision to grant (or deny) a motion to strike, just as it may reconsider other decisions.

The language of the Rule requiring a court to enter an order of acquittal flows from principles of Double Jeopardy.  "[I]n pleading double jeopardy, the burden is on the defendant to establish the identity of the offenses." *Low v. Commonwealth*, 11 Va. App. 48, 50 (1990).  Ordinarily, a defendant will meet this burden by producing "the record or transcript of the initial trial." *Id.*  Transcripts are not always prepared, particularly if the defendant pleads guilty.  Orders of the court, however, are preserved. *See* Code § 17.1-124 (addressing circuit court order books); Code § 16.1-69.55 (addressing general district court retention of records).  The requirement of Rule 3A:15 that a court "shall enter a judgment of acquittal if it strikes the evidence reflecting the judgment of acquittal" ensures an accurate record and thus protects a defendant from future jeopardy.  It is not meant to cabin the discretion of a judge to promptly reconsider an erroneously granted motion to strike.

It is settled law in Virginia that an order is final when it "disposes of the entire action and leaves nothing to be done except the ministerial superintendence of execution of the judgment." *Super Fresh Food Mkts. of Va., Inc. v. Ruffin*, 263 Va. 555, 560 (2002); *see also* Rule 1:1(b) ("Unless otherwise provided by rule or statute, a judgment, order, or decree is

6

final if it disposes of the entire matter before the court, including all claim(s) and all cause(s) of action against all parties, gives all the relief contemplated, and leaves nothing to be done by the court except the ministerial execution of the court's judgment, order, or decree."). A verbal pronouncement from the bench granting a motion to strike is not a final judgement under this longstanding definition. Moreover, under Rule 1:1(a):

> All final judgments, orders, and decrees, irrespective of terms of court, remain under the control of the trial court and may be modified, vacated, or suspended for twenty-one days after the date of entry, and no longer . . . . The date of entry of any final judgment, order, or decree is the date it is signed by the judge either on paper or by electronic means in accord with Rule 1:17.

If a trial court can modify, within time limits, a final order, *a fortiori* it can modify a non-final verbal pronouncement from the bench.

In short, Rule 3A:15 does not preclude a trial court from timely reconsidering a motion to strike. Furthermore, here the trial court could exercise its discretion to permit the Commonwealth to introduce additional evidence concerning the Maryland court records. *See, e.g., Hargraves v. Commonwealth*, 219 Va. 604, 608 (1978).

Unlike Rule 3A:15, however, the Double Jeopardy Clause does impose restrictions on a court's authority to revisit a granted motion to strike. We turn to that question next.

II.    THE DOUBLE JEOPARDY CLAUSE RESTRICTS A COURT'S AUTHORITY TO RECONSIDER A MOTION TO STRIKE BUT THOSE STRICTURES ARE NOT IMPLICATED HERE.

Both the United States Constitution and the Constitution of Virginia contain a Double Jeopardy Clause. U.S. Const., amend. V; Va. Const., art. I, § 8.[4] The Double Jeopardy Clause "protects against a second prosecution for the same offense after acquittal; it protects

---

[4] The scope of the Double Jeopardy provision of the Constitution of Virginia is not at issue in this case.

7

against a second prosecution for the same offense after conviction; and it protects against multiple punishments for the same offense." *Stephens v. Commonwealth*, 263 Va. 58, 62 (2002) (cleaned up and citations omitted). The Clause prevents "the State with all its resources and power" from making "repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *Green v. United States*, 355 U.S. 184, 188 (1957).

The United States Supreme Court addressed the question of a court's power to revisit an earlier decision to acquit in *Smith v. Massachusetts*, 543 U.S. 462 (2005). In *Smith*, after the prosecution had presented its evidence, a Massachusetts court originally granted a motion for an acquittal on one particular charge. *Id.* at 465. At that point, "[t]he prosecutor did not make or reserve a motion for reconsideration, or seek a continuance that would allow him to provide the court with favorable authority." *Id.* at 470. The defense then presented its case on the defendant's other charges and rested. *Id.* at 465. Afterwards, during a recess that occurred before closing arguments, the prosecution presented the court with additional authority showing that the court had erred in granting the motion for acquittal on the particular charge that had been dismissed. *Id.* The trial court reversed its judgment of acquittal on that charge and the jury convicted the defendant on that charge. *Id.*

In determining whether the trial court's reconsideration of its earlier acquittal violated the prohibition against double jeopardy, the Supreme Court concluded that, under Massachusetts law, the court's ruling granting the motion for acquittal was final, i.e., the trial court could not, as a matter of state law, reconsider its decision to grant the motion for

8

acquittal. *Id.* at 470. The Court acknowledged that "state law may prescribe that a judge's midtrial determination of the sufficiency of the State's proof can be reconsidered." *Id.* The Court further explained that the Double Jeopardy Clause forecloses reconsideration of a motion for acquittal when the defendant has suffered the possibility of prejudice. *Id*. at 471-72. The possibility of prejudice existed in *Smith* because the defendant had presented his evidence. *Id.*

The Supreme Court in *Smith* was closely divided. A four Justice dissent, authored by Justice Ginsburg, argued that the defendant's double jeopardy rights were not violated by the trial court's decision to reconsider. *Id.* at 475-80. Regardless of this disagreement, however, as the dissent noted, the majority and the dissent unanimously agreed that the Double Jeopardy Clause does not "bar the States from allowing trial judges to reconsider a midtrial grant of a motion to acquit on one or more but fewer than all counts of an indictment." *Id.* at 475. There was also no dispute between the majority and the dissent that "[a] State may provide for such reconsideration . . . by legislation or by judicial rule, common-law decision, or exercise of supervisory power." *Id.*

In this instance, Virginia law allows a trial court to reconsider a previously granted motion to strike. Under Virginia law, the circuit court's verbal pronouncement to grant the motion to strike was not final. The circuit court retained the authority to revisit its earlier ruling, so long as doing so did not offend Double Jeopardy. Moreover, the prosecution here did what the prosecution in *Smith* had not done, which is to immediately object to the trial court's decision to grant the motion to strike. In this case, the trial court promptly reversed itself, before the defendant presented any evidence or released any of its witnesses, further distinguishing this case from *Smith*. The double jeopardy bar does not apply here.

9

*Evans v. Michigan*, 568 U.S. 313 (2013), cited by the defendant, does not compel a different outcome. The issue in that case was "whether retrial is barred when a trial court grants an acquittal because the prosecution had failed to prove an 'element' of the offense that, in actuality, it did not have to prove." *Id.* at 317. The United States Supreme Court answered that question in the affirmative, holding that once a court enters a judgment of acquittal, even on a flawed legal basis, the defendant cannot be retried. *Id*. at 330. The Court explained that its decision was rooted in existing precedent. The Court expressly declined the invitation to revisit past precedent, including its prior decision in *Smith v. Massachusetts*. *See Evans*, 568 U.S. at 318, 327-28. In the case before us, the defendant is not being subjected to a retrial. Rather, the issue before us involves the power of a trial court, as a matter of state law, to revisit an erroneous resolution of a motion to strike and at what point such a reconsidered ruling might offend Double Jeopardy. *Evans* does not purport to address that issue because it was not before the Court. Instead, *Smith v. Massachusetts* provides the rule of decision on the double jeopardy aspect of this case.

In the present case, the trial court promptly reconsidered its granting of a motion to strike, and it did so before the defendant presented any evidence or altered his strategy by, for example, releasing witnesses. Consequently, the defendant suffered no Double Jeopardy violation.[5]

---

[5] Other courts have reached this conclusion. *See United States v. Hill*, 643 F.3d 807, 865-67 (11th Cir. 2011) (holding that jeopardy did not attach when the district court orally granted a motion for judgment of acquittal and then reversed its ruling after a lunch break); *Quintanilla v. State*, 496 S.W.3d 861, 867 (Tex. Ct. App. 2016) ("Because the trial court reconsidered its oral ruling and denied the motion for directed verdict before any further trial proceedings took place, we conclude that no double-jeopardy violation occurred.").

CONCLUSION

For the foregoing reasons, the judgment of the Court of Appeals is reversed, and final judgment is entered for the Commonwealth.

*Reversed and final judgment.*